**QUAKER CITY IRON WORKS, INC.**

v.

**UNITED STATES of America.**

Civ. A. No. 30612.

United States District Court
E. D. Pennsylvania.

March 18, 1966.

16. See also Note 8, supra, p. 20, relating to the matter of a proposed Home Rule Bill.

Schumacker & Lunkenheimer, Philadelphia, Pa., for plaintiff.

Sullivan Cistone, Asst. U. S. Atty., Philadelphia, Pa., David A. Wilson, Jr., and Edward J. Snyder, Attys., Dept. of Justice, Washington, D. C., for defendant.

## SUR PLEADINGS AND PROOF

VAN DUSEN, District Judge.

This case was tried to the late Senior Judge of this court, the Honorable Allan K. Grim, sitting without a jury. In accordance with the January 4, 1966, order of the Honorable Thomas J. Clary, Chief Judge, the case was assigned to the undersigned for decision. Argument was heard on February 25, 1966, as agreed to by the attached letters from counsel dated January 14 and January 20, 1966.

The plaintiff, Quaker City Iron Works, Inc., a Pennsylvania corporation with its principal place of business in Philadelphia, Pa., brought this action to recover $9,344.74 in Federal manufacturer's excise taxes (plus interest) which it has paid to the defendant, the United States of America. This court has jurisdiction under 28 U.S.C. § 1346(a) (1).

The excise taxes (plus interest) here sought to be recovered were assessed for the taxable period covering the first three calendar quarters of 1958. During that time, the plaintiff, in addition to other business, was engaged in the manufacture and sale of automobile bodies, truck trailers and similar trailer bodies within the meaning of § 4061(a), Internal Revenue Code of 1954, 26 U.S.C. § 4061. All of the plaintiff's sales were made at retail. The plaintiff filed timely Federal excise tax returns for the period January 1, 1958, to September 30, 1958, inclusive, and paid $26,929.39 as manufacturer's excise tax on net sales of $357,365.14. The defendant assessed additional manufacturer's excise taxes on these net sales in the amount of $8,121.33, together with interest of $1,223.41, which totals $9,344.74. This amount $9,344.74) was paid by plaintiff on February 10, 1961. On April 21, 1961, the plaintiff filed a claim for refund of the $9,344.74 in taxes and assessed interest, which was refused and is now the subject matter of this action.[1]

The plaintiff corporation sells in the New York, Philadelphia, and Baltimore areas and its principal customers are the major oil companies, truckers, and smaller oil companies (N.T. 12).[2] The principal competitors of the plaintiff in the sale of truck tanks and trailer tanks in the New York, Philadelphia, and Baltimore areas have been the Fruehauf Trailer Company of Detroit (Fruehauf), the Heil Company of Milwaukee (Heil), and the Trailmobile Company of Cincinnati (Trailmobile) [N.T. 10]. Fruehauf and Heil, taken together, account for approximately 40% of the sales in this field (N.T. 13). Fruehauf and Heil have such huge facilities that either of them could supply the entire market (N.T. 31, 32). These two companies exercise price leadership in the field of retail sales of truck tanks and trailer tanks and it is clear that the plaintiff must follow their leadership in order to compete successfully (N.T. 16). But unlike the plaintiff, which sells only at retail, Fruehauf and Heil also sell their truck tanks and trailer tanks at wholesale for a price amounting to approximately 40% less than their retail list prices (N.T. 14, 15).

---

1. Stipulation of the parties filed as Document 14.

2. Notes of Testimony filed as Document 17.

The competition in the field of truck tanks and trailer tanks has been so keen that Fruehauf operated at a loss in 1958 (N.T. 16), and plaintiff operated at a loss for six years beginning in April of 1958 (N.T. 49, 50).

It is clear that because of this competition the plaintiff could not have sold its truck tanks and trailer tanks at any price higher than it did sell them (N.T. 30, 31). The plaintiff, in order to compete successfully, has been forced to sell its products at from 10% to 30% less than the listed retail prices of Fruehauf and Heil (N.T. 30). The excise tax in question here was paid by the plaintiff-manufacturer and not passed on to the consumer (N.T. 40).

It is undisputed that the truck tanks and trailer tanks manufactured by the plaintiff in this case are subject to the provisions of § 4061 of the Internal Revenue Code of 1954 (26 U.S.C., 1958 Ed.),[3] which imposes on a manufacturer a Federal excise tax of 10% of the price for which such products are sold.

Section 4216(b) of the Internal Revenue Code of 1954 (26 U.S.C., 1958 Ed.),[4] directs the Secretary or his delegate to provide a "constructive sales price" which shall then be used as a base on which to compute the tax imposed under § 4061 (supra).

In accordance with the statutory authority of § 4216(b), the Commissioner of Internal Revenue in Revenue Ruling 54–61 (set out in its entirety in Exhibit B to this Memorandum) determined that the constructive sales price of truck and trailer tank bodies made by a manufacturer selling at retail only should be 75% of the established retail price. Revenue Ruling 54–61 provides further that in no event shall the constructive sales price of sales made at retail be lower than cost. It is this added limitation of cost which the plaintiff contends is invalid.

The District Director of Internal Revenue in the present case determined that the plaintiff was operating at a loss (which is admitted by the plaintiff)[5] and, hence, 75% of its retail price was below its cost. Therefore, relying on Revenue Ruling 54–61, the District Director refused to allow the plaintiff to use 75% of its retail price as a tax base. Accordingly, the District Director deter-

3. "§ 4061. Imposition of tax
"(a) Automobiles.—There is hereby imposed upon the following articles (including in each case parts or accessories therefor sold on or in connection therewith or with the sale thereof) sold by the manufacturer, producer, or importer a tax equivalent to the specified percent of the price for which so sold:
"(1) Articles taxable at 8 percent, except that on and after April 1, 1956, the rate shall be 5 percent—
"Automobile truck chassis.
Automobile truck bodies.
Automobile bus chassis.
Automobile bus bodies.
Truck and bus trailer and semitrailer chassis.
Truck and bus trailer and semitrailer bodies.
Tractors of the kind chiefly used for highway transportation in combination with a trailer or semitrailer.
A sale of an automobile truck, bus, truck or bus trailer or semitrailer shall, for the purposes of this paragraph, be con-sidered to be a sale of the chassis and of the body."

4. Section 4216(b) * is substantially a reenactment of § 3441(b) (1) of the Internal Revenue Code of 1939.
"§ 4216. Definition of price
" * * *
"(b) Constructive sale price.—If an article is—
"(1) sold at retail,
"(2) sold on consignment, or
"(3) sold (otherwise than through an arm's length transaction) at less than the fair market price, the tax under this chapter shall (if based on the price for which the article is sold) be computed on the price for which such articles are sold, in the ordinary course of trade, by manufacturers or producers thereof, as determined by the Secretary or his delegate."
* Note: The foregoing is prior to the amendment effective 1/1/59.

5. See page 2 of plaintiff's brief, filed as Document 24.

mined that the plaintiff should pay the tax based on its full retail price, since 75% of retail price was lower than cost.

█ It is noted that although Treasury Regulations and Revenue Rulings will normally be accepted and are always entitled to consideration and weight, they will be struck down if they are unreasonable or plainly inconsistent with the statute on which they are based. As the Supreme Court said in Manhattan General Equipment Co. v. Commissioner of Internal Revenue, 297 U.S. 129, 134, 56 S.Ct. 397, 80 L.Ed. 528 (1936):

"The power of an administrative officer or board to administer a federal statute and to prescribe rules and regulations to that end is not the power to make law, for no such power can be delegated by Congress, but the power to adopt regulations to carry into effect the will of Congress as expressed by the statute. A regulation which does not do this, but operates to create a rule out of harmony with the statute, is a mere nullity. [Citing cases.] And not only must a regulation, in order to be valid, be consistent with the statute, but it must be reasonable."

The statute involved here (§ 4216(b), set out in footnote 4) makes no mention of cost.[6] It is Revenue Ruling 54-61 that injects this element into the regulation purportedly promulgated under the statute. The statute itself states only that the tax be imposed on "the price for which such articles are sold, in the ordinary course of trade, by manufacturers or producers". That price, as is clearly shown by the legislative history, was ordinarily to be the wholesale price, which is apparent from an examination of the Report of the Committee on Ways and Means of the House of Representatives, 1939-1 C.B. (part 2) 457, at 480 (see "Report" attached to Document 29), where it was said:

"It is of utmost importance that the tax be imposed and administered uniformly and without discrimination. Each member of a competitive group must pay upon substantially the same basis as all his competitors, even though his sales methods may differ. Consequently, the bill requires that every effort be made to ascertain the manufacturers' or producers' price at the place of manufacture or production. In the case of commodities which are ordinarily sold at wholesale, this price will be the price at which the manufacturer sells to the wholesaler, even though the particular sale is at retail."[7]

█ It is a matter of common knowledge that the price for which articles are sold by a manufacturer is not necessarily higher than the cost of production. There are many instances where a manufacturer will sell items below cost for a considerable period of time in order to maintain his markets or continue business operations in the hope that the market will ultimately swing in his favor.

The vice of Revenue Ruling 54-61 is not apparent in the more usual situation where a manufacturer is selling retail items at a considerable profit, and the cost limitation, therefore, does not come into play. In the great majority of cases, the ruling operates to augment the Congressional intent. When, however, the manufacturer lowers his retail price below cost so that, under Revenue Ruling

---

6. It would appear of little significance that defendant claims that it in fact bases its tax on sales price (N.T. 27, 28), rather than cost, when cost is higher than sales price, since retail sales price was not the tax base prescribed by Congress and, furthermore, the Government should be required to follow its own regulation, as quoted in its own requested Finding of Fact No. 6, until it changes such regulation.

7. Although this Report states that "price may be established * * * by a building up from cost," this clearly contemplates a situation where the sales price is above cost.

54–61, he is no longer paying tax upon substantially the same basis as his competitors, the ruling becomes inconsistent with the statute. It seems clear that when Congress spoke of the "ordinary course of business," it contemplated not only good, but bad, times. For these reasons, Whattoff et al. v. United States, 8th Cir., 355 F.2d 473, decided January 10, 1966, [see copy of opinion attached to Document 30], relied on by the defendant, does not apply here since, in that case, there was no showing that sales were made below cost. In addition, *Whattoff* is further distinguishable from the present case since in that case the articles sought to be taxed were not manufactured by anyone except the taxpayer and, therefore, there was no established wholesale price for sales of such articles made in the ordinary course of trade.

It is pointed out by the Government that if the plaintiff prevails here, it will actually be paying less tax than its competitors on substantially similar sales. Although this may be true, any slight benefit to the plaintiff in this case appears to be considerably less than the detriment the plaintiff would otherwise suffer under this ruling, which, in its cost limitation, bears no relationship to the statutory language of § 4216(b). Furthermore, under other circumstances (i. e., when 75% of the retail price is higher than a competitor's wholesale price), the plaintiff will have to pay slightly more tax than its competitors.

The following examples, based on the testimony given at trial (N.T. 40–43) by Mr. Jenson, Vice President of the plaintiff corporation, are illustrative of this point:

*Example 1*—Mr. Jenson testified that under Revenue Ruling 54–61 as it now stands, if the plaintiff and either Fruehauf or Heil sold a trailer tank to a major oil company at retail for $7500., the Government would impose a tax of $750.00 on the plaintiff (10% of $7500.),[8] while imposing a tax of only $600. on either Fruehauf or Heil (10% of $6000.).[9]

*Example 2*—Similarly, such a sale of a trailer tank for $8500. would result in a tax of $850. on the plaintiff and $600. on either Fruehauf or Heil.[10] If the cost limitation is stricken from Revenue Ruling 54–61, the results in the above examples are as follows:

In *Example 1*—The plaintiff would pay a tax of $562.50 and either Fruehauf or Heil would still pay a tax of $600. This results in a comparative tax advantage of $37.50 for the plaintiff.[11]

In *Example 2*—The plaintiff would pay a tax of $637.50 while either Fruehauf or Heil would continue to pay a tax of $600.[12] This results in a $37.-50 comparative tax disadvantage to the plaintiff.

The testimony of Mr. Jenson was that actual retail price for which Fruehauf and Heil sold truck tanks and trailer tanks was from 10% to 30% off list price (N.T. 30). The plaintiff also sells at retail for this price (N.T. 30). In addition, Mr. Jenson testified that Fruehauf and Heil's wholesale price was 40% off their retail list price (N.T. 29). If it is assumed that the average retail sale made by Fruehauf and Heil is made at 20% off retail list price (averaging 10% and 30%), it is apparent that the District Director's finding that whole-

---

8. $7500. is used as a tax base since the plaintiff makes no sales at wholesale and is operating at a loss.

9. Fruehauf and Heil have as a tax base their wholesale price, which in both cases is $6000.

10. Assuming that plaintiff is still operating at a loss and Fruehauf and Heil maintain a wholesale price of $6000.

11. 75% of $7500. is $562.50, and footnote 10 assumption.

12. 75% of $8500. is $637.50, and assumption of footnote 10.

sale prices in this industry are usually equal to 75% of retail prices is correct.[13]

 Thus, it would seem from the foregoing that the operation of Revenue Ruling 54–61, with the cost limitation deleted, is in accord with the Congressional desire to base the tax on price and with the substantial equality of taxation envisioned by Congress.

The Treasury Department may adopt any other reasonable measure of the tax, so long as it is related to "the price for which such articles are sold, in the ordinary course of trade, by manufacturers or producers thereof," and is not related to cost where, as in this case, sales are below cost so that cost bears no relation to price.

Rulings on evidence and requests are contained in Exhibit A attached hereto.

Counsel may submit within two weeks an appropriate order in accordance with the foregoing.

*EXHIBIT A*

TO OPINION OF MARCH 18, 1966, IN QUAKER CITY IRON WORKS, INC. V. UNITED STATES OF AMERICA,

CIVIL ACTION NO. 30612

A. *Rulings on Evidence*

1. The Objection at N.T. 16 is sustained and the hearsay testimony concerning Heil operating at a loss in 1961 and 1962 has not been considered. [There was no objection to the previous question concerning Fruehauf.]

2. The Dun and Bradstreet reports have not been considered for the truth of the matters asserted in them (see N.T. 23). The Motion to Strike at N.T. 24 is granted.

3. The Motion to Strike at N.T. 31 is granted as to the last sentence of the last answer on that page.

B. *Plaintiff's Requests (Document 21)*

1. Requests for Findings of Fact: Requests 1–12 and 15–18 are affirmed.

Request 13 is affirmed.

Request 14 is affirmed as modified by deleting the words "Heil" and "all" in line 4 of Request 14, and by deleting the words "and Heil operated at a loss in 1961 and 1962 (n/t 17)" in lines 6 & 7 of Request 14.

Request 20 is affirmed as modified by deleting the last sentence.

2. Requests for Conclusions of Law: Requests 1 and 2 are affirmed.

C. *Defendant's Requests (Document 22)*

1. Requests for Findings of Fact: Requests 1–8 are affirmed.

Request 9 is affirmed as modified by deleting the last sentence.

2. Requests for Conclusions of Law: Requests 1 and 2 are denied.

---

13. The following mathematical demonstration substantiates the District Director's finding of the figure of 75%:

$$\text{Let } X = \text{retail list price}$$
$$\text{Then } X - .20X = \text{actual retail price on average sale}$$
$$\text{Let } Y = \text{wholesale price}$$
$$\text{Then } X - .40X = Y \text{ (wholesale price is 40\% off retail list price)}$$
$$\text{Let } Z = \% \text{ which ought to be used by District Director.}$$
$$(X - .20X)\, Z = Y$$

substituting for Y in terms of X

$$(X - .20X)\,(Z) = X - .40X$$

transposing

$$Z = \frac{X - .40X}{X - .20X}$$

$$Z = \frac{(1 - .40)\,X}{(1 - .20)\,X} \quad \text{factoring and cancelling}$$

$$Z = \frac{.60}{.80} \quad \text{reducing}$$

$$Z = \tfrac{3}{4} = 75\%, \text{ which is the figure used by the District Director}$$

in Revenue Ruling 54–61.

**456**

*EXHIBIT B*

TO OPINION OF MARCH 18, 1966, IN QUAKER CITY IRON WORKS, INC. v. UNITED STATES OF AMERICA,

CIVIL ACTION NO. 30612

"REGULATIONS 46, SECTION 316.50: Scope of tax. Rev. Rul. 54-61 *

" * * *

"Sales by a manufacturer of truck or truck trailer bodies to dealers or others for resale are considered sales at wholesale. Where the manufacturer's vendee purchases such a body for use and not for resale, the transaction is considered a sale at retail.

"The following sets forth the method of computing the tax with respect to sales by manufacturers of truck or truck trailer bodies at wholesale, wholesale and retail, and retail only.

"With respect to sale of bodies at wholesale, the tax imposed by section 3403(a) of the Code should be based on the wholesale price * * *.

"Under the authority of section 3441 (b) (1) of the Code, the tax on retail sales of bodies by a manufacturer who also sells such articles at wholesale, is to be based upon his highest established wholesale price to independent dealers, * * *.

"The tax on sales of bodies by a manufacturer who sells only at retail is to be computed, under the authority of section 3441(b) (1) of the Code, on the price for which such articles are sold by manufacturers or producers in the ordinary course of trade as determined by the Commissioner. Such determination has been made with respect to truck or truck trailer bodies and it has been found to represent 75 percent of the established retail price, * * *. In any case where the tax base determined in this manner with respect to sales by a manufacturer who sells only at retail results in a price which is less than the manufacturer's cost of the body when in condition ready for delivery to the purchaser, the tax should be computed at 8 percent of such cost."

\* The foregoing applies to the Internal Revenue Code of 1939, which is essentially similar to the Internal Revenue Code of 1954.