CONTINENTAL TRUCK INDUSTRIES,
INC., Plaintiff,

v.

UNITED STATES of America,
Defendant.

No. 68-C-1291.

United States District Court,
E. D. New York.

March 2, 1972.

Shea, Gallop, Climenko & Gould, New York City, for plaintiff.

Robert A. Morse, U. S. Atty., E. D. of New York, Brooklyn, N. Y., for defendant.

MISHLER, Chief Judge.

This is an action for refund of taxes paid. Plaintiff is and was at all times relevant to this action a corporation organized under the laws of the State of New York and having its principal place of business at 61–50 Maurice Avenue, Queens, New York, within the Eastern District of New York. Plaintiff seeks the recovery of $10,094.49, principal and interest, that amount having been assessed against plaintiff as unpaid manufacturer's excise taxes for the period beginning on October 1, 1961 and ending December 31, 1966. Payment of the assessment was made in 1967 and a claim for refund was duly filed in 1968 on which no action has yet been taken by the Internal Revenue Service. Jurisdiction in this court is proper under 28 U. S.C. § 1346(a) (1).

The case comes to this court on stipulated facts, the only issue being one of law.

*The Facts*

Plaintiff makes and sells truck bodies. The bodies are made to order for plaintiff's customers, who purchase truck chassis and have them delivered to plaintiff's place of business in Queens. Plaintiff then builds the body, attaches it to the chassis, and delivers the finished truck to the customer.

Plaintiff has three classes of customers: 1. *Consumers*—these are individuals or firms who use the truck purchased from plaintiff in their trade or business; 2. *Retailers*—(Dealers)— these are firms which resell the trucks purchased from plaintiff to others who actually use the trucks; 3. *Renters*— these are individuals or firms which are in the business of renting or leasing trucks to other individuals or firms who use the trucks in their trade or business.

*Plaintiff sells the same type of truck to each of the above classes of customers at the same price.*[1]

In computing the excise tax due on its sales of truck bodies pursuant to 26 U. S.C. §§ 4061, 4216, plaintiff used as its tax base, during all the period in question, 100% of its sales price on sales to retailers and 75% of its sales price on sales to consumers and renters. The government denied the taxpayers' claim of 75% of the sales price to renters as its tax base and computed the assessment on 100% of the sales price to renters as the tax base for the imposition of the manufacturer's excise tax.

*The Arguments*

Plaintiff argues that the sales it made to renters were sales at retail within the meaning of 26 U.S.C. § 4216 and that it was thus allowed to use a constructive sales price in computing its excise tax liability on those sales. Plaintiff further argues that where there are no sales to wholesale distributors, as in its case, the proper constructive sales price to be used is 75% of the retail price.

---

1. I. e., supposing that plaintiff produced a Model XYZ, that model would cost the same amount to the customer, re-gardless of whether the customer was a consumer, a retailer-dealer, or a renter.

Defendant admits, for the purposes of this suit only, that the sales to renters were sales at retail. (Defendant's Trial Brief, p. 4). However, defendant resorts to a complex argument to the effect that, even where plaintiff's sales to renters characterized as "retail" sales, the tax base for excise tax purposes should still be 100% of the sales price. Alternatively, defendant argues that if a constructive sales price is warranted, it should be established by the "cost plus 10 percent" rule.

The question presented to this court is thus how to establish a constructive sales price pursuant to 26 U.S.C. § 4216(b) (1) where the price of the goods to consumers is the same as it is to retailers (i.e., at wholesale), and where there is no established course of trade between the manufacturer and wholesale distributors.

*The Law*

Since 1932 there have been provisions in the various revenue statutes and codes for a manufacturers' excise tax to be placed on sales by a manufacturer of automobile truck bodies.[2] In the 1954 Code, which is applicable to the instant case, the section which imposes the tax is § 4061(a). The language of this statute is relatively simple:

(a) *Automobiles*—There is hereby imposed upon the following articles (including in each case parts or accessories therefor sold on or in connection therewith or with the sale thereof) sold by the manufacturer, producer, or importer *a tax equivalent to the specified percent of the price for which so sold:*

(1) Articles taxable at . . . percent, . . .

\*   \*   \*   \*   \*   \*

Automobile truck bodies

\*   \*   \*   \*   \*   \*

[Emphasis supplied.]

Although § 4061(a) and its precursors make no mention of any distinction to be made between the treatment accorded manufacturers' sales at different levels of distribution, it is evident that there was a Congressional intent to regularize the amount of tax payable by a manufacturer on a given item, regardless of the level of distribution at which it was sold by said manufacturer. *See* Act of June 6, 1932, ch. 209, § 619(a), 47 Stat. 267. That act, and its later analogs 26 U.S.C. § 4216 (Int.Rev.Code of 1954) and Int.Rev.Code of 1939, ch. 29, § 3441, 53 Stat. 416, provide that a manufacturer who sells at retail will only have to pay an excise tax based on "the price for which such articles are sold, *in the ordinary course of trade,* by manufacturers or producers thereof . . ." 26 U.S.C. § 4216(b) (1). [Emphasis supplied.]

What is now the first sentence of 26 U.S.C. § 4216(b) (1) remained substantially the same from 1932 to 1958, and was the entire provision relating to constructive sales price. In 1958, Congress amended this sub-section by adding substantial new matter. Act of September

2. A Note on Terminology.—The statutes and regulations dealing with manufacturer's excise tax are confusing in their use of certain terms. This confusion has contributed to the contest between the parties to the present action. In this memorandum of decision, the word *consumer* shall mean the party to whom the manufactured item is ultimately sold, i. e., the user. The word *retailer* (or retail dealer) shall mean that class of distributor who sells to the *consumer*. The word *wholesaler* (or wholesale distributor), shall mean that class of distributor which usually sells to the *retailer*. The term sale *at retail* shall mean the sale of an item by the retailer to the consumer. The term sale *at wholesale* shall mean the sale of an item by a wholesaler to a retailer. The term *retail price* shall mean the price paid by the consumer. The term *wholesale price* shall mean the price paid by the retailer. There is no specific known term for the price paid by the wholesaler to the manufacturer. We shall call it the *first-level distributor's price.* Accordingly, a sale by a manufacturer to a wholesaler shall be a first-level sale, corresponding to a sale at wholesale (second level) and at retail (third level).

2, 1958, Pub.L. 85–859, §§ 115, 116, 117(b), 72 Stat. 1279–81, *amending* 26 U.S.C. § 4216. This new matter being highly relevant to the case at hand, the entire first two paragraphs of sub-section 4216(b) are set out below, the non-*underlined* matter being the text of the constructive sales price provision as it read from 1932 to 1958, and the *under-lined* portion being the new additions of 1958:

§ 4216(b) Constructive sale price—

(1) In general.—If an article is—

(A) sold at retail,

(B) sold on consignment, or

(C) sold (otherwise than through an arm's length transaction) at less than the fair market price,

the tax under this chapter shall (if based on the price for which the article is sold) be computed on the price for which such articles are sold, in the ordinary course of trade, by manufacturers or producers thereof, as determined by the Secretary or his delegate. *In the case of an article sold at retail, the computation under the preceding sentence shall be on whichever of the following prices is the lower: (i) the price for which such article is sold, or (ii) the highest price for which such articles are sold to wholesale distributors, in the ordinary course of trade, by manufacturers or producers thereof, as determined by the Secretary or his delegate. This paragraph shall not apply if paragraph (2) applies.*

*(2) Special rule.—If an article is sold at retail or to a retailer, and if—*

*(A) the manufacturer, producer, or importer of such article regularly sells such articles at retail, or to retailers, as the case may be,*

*(B) the manufacturer, producer, or importer of such article regularly sells such articles to one or more wholesale distributors in arm's length transac-*

*tions and he establishes that his prices in such cases are determined without regard to any tax benefit under this paragraph,*

*(C) in the case of articles upon which tax is imposed under section 4061(a) (relating to automobiles, trucks, etc.), the normal method of sales for such articles within the industry is not to sell such articles at retail or to retailers, or combinations thereof, and*

*(D) the transaction is an arm's length transaction, the tax under this chapter shall (if based on the price for which the article is sold) be computed on whichever of the following prices is the lower:*

*(i) the price for which such article is sold, or*

*(ii) the highest price for which such articles are sold by such manufacturer, producer, or importer to wholesale distributors (other than special dealers).*

Both the original provision and the current subsection evidence an intention on the part of Congress not to tax manufacturers on the sales price of the goods sold at retail, but rather to erect an artificial "constructive sale price" more nearly approximating the manufacturer's ordinary sales price, and to compute the tax on the latter price. The difficulty experienced by the current parties arises when they differ over how one arrives at that constructive sales price.

The old constructive price provision, i. e., the first sentence of the current § 4216(b) (1), made no mention at all of how the constructive price was to be arrived at, save the mention given to "the price for which such articles are sold, in the ordinary course of trade . . ." The problem was solved by the adoption of regulations under the 1939 Code, which stated that where a manufacturer had an established practice of selling his goods at wholesale, that price would be

the constructive sale price for the goods which he sold at retail.[3]

The problem with the solution arrived at by the Secretary in the Regulations just cited is that it provides for only two levels of distribution, wholesale and retail. This is in disregard of the fact, of which judicial notice is taken by this court, that sales "at wholesale" can be subdivided into sales to retailers and sales to jobbers. Different prices may or may not be charged to each. Nevertheless, Congress may be said to have ratified the use of these ambiguous terms, "retail" and "wholesale," by reenacting, until 1958, the statutory provisions to which they apply several times after their initial promulgation, without changing the law.

■ There can be no doubt, however, that the language added by Congress in 1958 was intended to change the situation to the end that the base price used in arriving at a constructive sale price would be the price charged by the manufacturer to jobbers or "wholesale distributors" and not the price charged by the manufacturer to retailers having a direct sales relationship with the manufacturer. This conclusion is reinforced not only by the plain meaning of the additions to sub-section 4216(b) but also by the legislative history of the amendments and the temporary regulations issued in regard thereto.

The Senate Report on the legislation which would become, without any substantial amendments, the additions to § 4216(b), commented as follows (S.Rep. No. 2090, 85th Cong., 2d Sess., as cited in 3 U.S.Code Cong. & Admin.News [1958] p. 4418):

(d) Where manufacturers sell to consumers

As indicated above, paragraph (1) of section 4216(b) as it appears in the

bill is the constructive price provision in existing law except for one modification.

*In the case of a sale to consumers, existing law has generally been interpreted as requiring the constructive price to be determined by reference to the price for which such or similar articles are sold by manufacturers to retailers.* . . .

.   .   .   .   .

This provision [the new second sentence in § 4216(b) (1)] will not result in the establishment of a constructive price in any new cases, but rather will provide that where a constructive price is already required by existing law, *the price generally will be established at the price to wholesalers, rather than at the price to retailers.*

[Emphasis supplied.]

No permanent regulations have yet been issued under the amended code section. Temporary regulations were issued, however, and these too support the conclusion that Congress meant what it said when it altered the usual manner in which a constructive sale price was arrived at. Thus, 26 C.F.R. § 148.1–5(d) (1) defines the term "wholesale distributors," which is used in the text of the statute, as follows: "The term 'wholesale distributors' means persons who customarily resell to others who in turn resell."

■ In light of the preceding evidence, and the plain meaning of the words of the statute, this court must conclude that where the special rule of § 4216(b) (2) does not apply, and the manufacturer has made retail sales to consumers, the constructive sale price for use in computing taxes will be either (a) the price charged to wholesale distributors if the manufacturer "has an established bona fide practice of selling

---

3. § 316.15 of Regulations 46 (1940 ed.) reads as follows:
   Where a manufacturer sells articles at retail, the tax on his retail sales ordinarily will be computed upon a price for which similar articles are sold by him at wholesale. However, in such cases it must be shown that the manufacturer has an established bona fide practice of selling the same articles in substantial quantities at wholesale. If he has no such sales at wholesale, a fair market price will be determined by the Commissioner.

such articles in substantial quantities to wholesale distributors," or, (b) if the manufacturer has no sales to wholesale distributors, a fair market price to be determined by the Commissioner. However, a ceiling is set on the constructive sale price determined under either (a) or (b), in that in no event can the constructive sale price be higher than the price at which the goods were actually sold at retail. *See* 26 C.F.R. § 148.1–5(b) (1).

■ In the instant case, plaintiff concededly does not sell its products to wholesale distributors. Thus, a fair market price is to be determined by the Commissioner. This "fair market price," must, by the intendment of the statute, be determined with regard to the market between manufacturers and wholesale distributors, and not with regard to the manufacturer-retailer or manufacturer-consumer markets. Such a determination has not been made by the Commissioner.

Plaintiff asserts the contrary. It points to Revenue Rule 54–61, 1954 Cum.Bull. 259, and deduces therefrom that the Commissioner has determined that the constructive sale price on truck bodies is to be 75% of the retail price.[4]

---

4. Rev.Rul. 54–61, 1954 Cum.Bull. 259:

Advice is requested concerning the application of the tax under section 3403(a) of the Internal Revenue Code to the sale by a manufacturer of a new truck or truck trailer bodies produced from new or salvaged materials furnished by the manufacturer to replace bodies which have been wrecked.

Under section 3403(a) of the Code, tax at the rate of 8 percent is imposed on the sale by the manufacturer of automobile truck chassis, automobile truck bodies, truck and bus trailer and semitrailer chassis, and truck and bus trailer and semitrailer bodies.

It is held that where a manufacturer furnishes either new or salvaged materials and produces a new truck or truck trailer bodies to replace bodies which have been wrecked, the sale of the bodies by the manufacturer is subject to tax under section 3403(a) of the Code. However, under the provisions of section 3443(a) of the Code, a credit may be allowed to a manufacturer in the amount of excise tax which has been paid on any new parts purchased and used by him in the manufacture of bodies with respect to which tax has been reported or paid. (See section 316.204, Regulations 46.)

Sales by a manufacturer of truck or truck trailer bodies to dealers or others for resale are considered sales at wholesale. Where the manufacturer's vendee *purchases such a body for use and not for resale* the transaction is considered a sale at retail.

The following sets forth the method of computing the tax with respect to sales by manufacturers of truck or truck trailer bodies at wholesale, wholesale and retail, and retail only.

With respect to sale of bodies at wholesale, the tax imposed by section 3403 (a) of the Code should be based on the wholesale price subject to the following adjustments provided by section 3441(a) of the Code. To the wholesale price there should be added any charge for the transportation or delivery of the bodies; and there should be excluded any expenses actually incurred by the manufacturer (1) in effecting delivery of the bodies to the purchasers, (2) for installation of the completed bodies on chassis, (3) for insuring shipments to the purchasers, and the amount of tax if not entered on the invoice as a separate charge.

Under the authority of section 3441(b) (1) of the Code, the tax on retail sales of bodies by a manufacturer who also sells such articles at wholesale, is to be based upon his highest established wholesale price to independent dealers, subject to the same adjustments hereinbefore stated in connection with sales at wholesale.

The tax on sales of bodies by a manufacturer who sells only at retail is to be computed, under the authority of section 3441(b) (1) of the Code, on the price for which such articles are sold by manufacturers or producers in the ordinary course of trade as determined by the Commissioner. Such determination has been made with respect to truck or truck trailer bodies and it has been found to represent 75 percent of the established retail price, subject to adjustment with respect to the above-mentioned additions and exclusions provided by section 3441(a) of the Code. This results in the adjusted price on which the tax is to be based. If the tax is not included in the retail price, it is to be computed at 8 percent of the adjusted price. Where the tax is included in the

It is true that the ruling cited by plaintiff does decide on 75% of the retail price as the correct constructive price for truck bodies where the manufacturer sells at retail. However, that ruling was promulgated pursuant to the 1939 Code and the regulations issued thereunder. Accordingly, the ruling assumes that only two levels of distribution exist. In this regard it is nullified by the amendments made to the statute in 1958. Dixon v. United States, 381 U.S. 68, 74, 85 S.Ct. 1301, 1305, 14 L.Ed.2d 223 (1965); Manhattan General Equipment Co. v. C. I.R., 297 U.S. 129, 134, 56 S.Ct. 397, 400, 80 L.Ed. 528 (1936). The ruling, and the regulations prior to the amendment of the statute, assumed that the constructive price should equal the price *to retailers*. This assumption may have been correct prior to 1958, but it is no longer so by reason of the changes made in that year.[5]

The Commissioner's prior ruling having been rendered a nullity by the passage of the amendments in 1958, no present percentage guideline exists for the computation of the constructive price. Defendant argues that in this event the cost plus ten percent method ought to be used to determine the constructive price. As to the "cost" element, this court can see no harm in its use, it having been sanctioned by Congressional committee reports, court decisions, and revenue rulings which are still effective.[6] This court does not reach the questions concerning the components of "cost," however, because of the difficulties it finds with the ten percent profit calculation.

The ten percent profit allocation originated under the old law.[7] There is no reason to doubt that the figure was set with relation to the usual profit margin in sales to retailers, rather than sales to wholesale distributors, as directed by the then-current interpretation of the law. This leads us to doubt that ten percent is the correct figure to be used nowadays, when the relevant sales price is that to the wholesale distributor rather than the retailer. In such circumstances it is again up to the Commissioner to determine a new figure.

The Secretary of the Treasury or his delegate has failed to determine a constructive sales price in this instance where the manufacturer does not have significant sales to wholesaler-distribu-

---

retail price, it may be computed at two twenty-sevenths (8/108) of the adjusted price in order to provide for the exclusion of the tax from the price on which it is based. In any case where the tax base determined in this manner with respect to sales by a manufacturer who sells only at retail results in a price which is less than the manufacturer's cost of the body when in condition ready for delivery to the purchaser, the tax should be computed at 8 percent of such cost.

It is further held that where a manufacturer merely replaces certain parts of a used truck or truck trailer body belonging to a customer, such operation is considered to constitute a repair operation and the tax imposed under section 3403 (a) of the Code does not apply to the amount charged for such repairs. However, the manufacturer is liable for tax under section 3403(c) of the Code, with respect to any taxable parts or accessories of his manufacture or which were purchased by him tax-free for further manufacture, which are sold to the customer in connection with the repair operation.

5. Neither Quaker City Iron Works, Inc. v. United States, 256 F.Supp. 450 (E.D.Pa. 1966) nor Brown v. Campbell, 163 F. Supp. 471 (N.D.Tex.1958) is relevant here. The contested taxes in both of those cases were due for periods prior to the effective date of the 1958 amendments: January 1, 1959.

6. *See* The Committee Report of the House of Representatives pertaining to the Revenue Act of 1932 (H.Rep. No. 708, 72nd Cong., 1st Sess., pp. 32–33 (1939–1 Cum. Bull. (Part 2) 457, 480)); Boise National Leasing, Inc. v. United States, 389 F.2d 633 (9th Cir. 1968); Whattoff v. United States, 355 F.2d 473 (8th Cir. 1966); Technicolor Motion Picture Corp. v. Westover, 202 F.2d 224 (9th Cir. 1953); Revenue Ruling 54–61, 1954–1 Cum.Bull. 259; Revenue Ruling 54–490, 1954–2 Cum.Bull. 416.

7. *See* Revenue Ruling 54–61, 1954–1 Cum. Bull. 259; Revenue Ruling 54–490, 1954–2 Cum.Bull. 416.

tors. Without it the plaintiff's tax liability pursuant to 26 U.S.C. § 4216 cannot be determined. The defendant is directed to seek a retroactive regulation or ruling, 26 U.S.C. § 7805, setting forth the manner in which a constructive sales price is to be determined under the facts of this case, which regulation or ruling shall be in accordance with the opinions expressed herein.

The court will hold in abeyance its final determination pending the promulgation of the regulation or ruling and the results of the tax assessment pursuant thereto.

Meanwhile, the court retains jurisdiction of this case for any further or different application with reference to the determination of the issue.

So ordered.