**CERTIFIED STAINLESS SERVICES, INC., d/b/a West-Mark, Plaintiff-Appellant,**

v.

**UNITED STATES of America, Defendant-Appellee.**

No. 83–2278.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 11, 1984.

Decided July 10, 1984.

Lemoine Skinner, III, Titchell, Maltzman, Mark, Bass, Ohleyer & Mishel, San Francisco, Cal., for plaintiff-appellant.

Kenneth Greene, Dept. of Justice, Washington, D.C., for defendant-appellee.

* Honorable Justin L. Quackenbush, United States District Judge for the Eastern District of Washington, sitting by designation.

1. I.R.C. § 4061(a) provides in pertinent part:

Before SNEED and FLETCHER, Circuit Judges, and QUACKENBUSH,* District Judge.

SNEED, Circuit Judge:

Certified Stainless Services, Inc. (Certified) appeals from the district court's summary judgment denying recovery for overpayment of excise taxes assessed under I.R.C. § 4061(a). This appeal concerns the application of the "cost-floor" method of computing a manufacturer's federal excise tax. Specifically, the question we must decide is whether the excise tax must be computed on the basis of total cost, except to the extent it exceeds the retail price, rather than on 75% of the retail price when the sale was at retail and the total cost of manufacture exceeds 75% of the retail price. The position of the United States is that total cost, except to the extent it exceeds the retail sales price, is the proper basis of the tax. The district court, 569 F.Supp. 302 (N.C.Cal.1983), so held and we agree. We, therefore, affirm.

## I.

### FACTS

Certified is a California corporation that manufactures tank trailers and bodies used primarily for the transportation of liquids. During the period in question, 1976 through 1978, Certified made all of its sales at retail. Each sale was individually negotiated on the basis of the customer's particular specifications.

The tank trailers and bodies manufactured by Certified are subject to a manufacturer's excise tax of 10% imposed by I.R.C. § 4061(a).[1] Where a manufacturer

(1) Tax imposed.—There is hereby imposed upon the following articles ... sold by the manufacturer, producer, or importer a tax of 10 percent of the price for which so sold, ... Automobile truck chassis.

sells only at retail, I.R.C. § 4216(b)(1) authorizes the Internal Revenue Service (IRS) to compute the excise tax based on a "constructive sale price."[2] For all calendar quarters in 1976 through 1978, Certified computed its excise tax by using a tax base of 75% of the retail sales price of each tank trailer sold, without regard to the cost of manufacturing each trailer.

The IRS, relying on Revenue Ruling 68–202, determined that the proper constructive sales price of Certified's trailers was not 75% of the retail price but the higher of (a) 75% of the retail sales price or (b) the total cost to manufacture and sell each trailer (including a 10% overhead factor), but in no event more than the actual retail sales price. Applying this "cost-floor" rule, the IRS assessed deficiencies against Certified for each quarter in 1976 through 1978. The actual sales price was the "constructive sale price" for most of Certified's sales for this period, because Certified's costs plus 10% exceeded its retail sales price in nearly every reported sale.

Certified paid a deficiency assessment of $2,646.09 for the second quarter of 1977 and filed a claim for refund, alleging that its tax liability should be calculated on the basis of 75% of the sales price, without regard to cost. When the IRS failed to act on the claim, Certified brought suit in district court seeking a refund of the $2,646.09 plus interest and costs. Certified and the government stipulated that if the assessment for the second quarter of 1977 were upheld the court could enter judgment against Certified for the unpaid assessments for the remaining calendar quarters between 1976 and 1978. The district court granted summary judgment for the government in the amount of $106,276 plus interest.

## II.

### DISCUSSION

Certified challenges the validity of using the cost-floor rule in Revenue Ruling 68–202 to determine its excise tax liability. The cost-based method of determining a constructive sales price for purposes of I.R.C. § 4216(b)(1) has been upheld by the courts, most recently by the Third Circuit in *Strick Corp. v. United States*, 714 F.2d 1194 (3d Cir.1983). We agree with the reasoning in *Strick* and affirm the application of the cost-floor rule in this case.[3]

The computation of the federal excise tax liability differs depending on whether the sale is at wholesale or retail. Ordinarily it is computed on the basis of

Automobile truck bodies.
. . . .
Truck and bus trailer and semitrailer chassis.
Truck and bus trailer and semitrailer bodies.
Tractors of the kind chiefly used for highway transportation in combination with a trailer or semitrailer.
A sale of an automobile truck, bus, truck or bus trailer or semitrailer shall, for. the purposes of this subsection, be considered to be a sale of a chassis and of a body enumerated in this subsection.

2. During the relevant time period the statute provided:
(b) Constructive sale price.
(1) In General. If an article is
(A) sold at retail
. . . .
the tax under this chapter shall (if based on the price for which the article is sold) be computed on the price for which such articles are sold, in the ordinary course of trade, by

manufacturers or producers thereof, as determined by the Secretary. In the case of an article sold at retail, the computation under the preceding sentence shall be on whichever of the following prices is the lower: (i) the price for which such article is sold, or (ii) the highest price for which such articles are sold to wholesale distributors, in the ordinary course of trade, by manufacturers or producers thereof, as determined by the Secretary. I.R.C. § 4216(b)(1) (1976).

3. Congress amended § 4216(b)(1) in 1978 to preclude the use of cost in determining a constructive sales price for truck trailers and bodies. Pub.L. No. 95–458, 92 Stat. 1255. However, the legislative history accompanying Public Law 95–458 expressly states that no inference may be drawn from the amendment regarding the validity of the cost-floor rule as applied to transactions before January 1, 1979. S.Rep. No. 1127, 95th Cong., 2d Sess. 4, *reprinted in* 1978 U.S.Code Cong. & Ad.News 2904, 2907.

the wholesale price charged by the manufacturer. *See, e.g., Creme Manufacturing Co. v. United States,* 492 F.2d 515, 518 (5th Cir.1974). However, where a manufacturer sells its products at retail only, I.R.C. § 4216(b)(1) authorizes the IRS to compute the excise tax with reference to a constructive sales price "as determined by the Secretary." [4] The constructive sales price attempts to approximate a wholesale price for a manufacturer selling only at retail.

Treasury regulations issued pursuant to section 4216(b)(1) provide that where a manufacturer has no established practice of selling to wholesale distributors, "a fair market price will be determined by the Commissioner." [5] 26 C.F.R. § 148.1–5(b)(1) (1983). The price so determined may not exceed the actual retail price of the article. *Id.* In a 1954 Revenue Ruling interpreting these Treasury regulations, the Commissioner determined that the "fair market price" for purposes of section 4216(b)(1) is the higher of (a) 75% of the actual sales price, or (b) the cost of production, not to exceed the actual selling price. Rev.Rul. 54–61, 1954–1 C.B. 259. Revenue Ruling 68–202 applies this cost-floor rule to custom manufacturers such as Certified that sell at retail but do not sell at an "established retail price." Rev.Rul. 68–202, 1968–1 C.B. 477.

 Revenue Rulings, while not binding on the Secretary or on the courts, *see Dixon v. United States,* 381 U.S. 68, 73, 85 S.Ct. 1301, 1304, 14 L.Ed.2d 223 (1965); *Washington State Dairy Products Commission v. United States,* 685 F.2d 298, 300 (9th Cir.1982), will be given considerable weight when explicating the Commissioner's authority to implement a congressional mandate. *Estate of Lang v. Commissioner,* 613 F.2d 770, 776 (9th Cir.1980).

In this instance, section 4216(b)(1) expressly grants to the Secretary discretionary power to determine a constructive sales price. Treasury regulations delegate to the Commissioner authority to determine a "fair market price" for purposes of the section. Treasury regulations "must be sustained unless unreasonable and plainly inconsistent with the revenue statutes," *Commissioner v. Portland Cement Co.,* 450 U.S. 156, 169, 101 S.Ct. 1037, 1045, 67 L.Ed. 2d 140 (1981) (quoting *Commissioner v. South Texas Lumber Co.,* 333 U.S. 496, 501, 68 S.Ct. 695, 698, 92 L.Ed. 831 (1948)), and those issued under section 4216(b)(1) have been found to be reasonable and consistent with the intent of the statute. *Whattoff v. United States,* 355 F.2d 473, 478 (8th Cir.1966); *see also Strick,* 714 F. 2d at 1197. Accordingly, we must give deference to the Revenue Ruling provisions fixing a constructive sales price. *See Estate of Lang,* 613 F.2d at 776; *see also National Muffler Dealers Ass'n v. United States,* 440 U.S. 472, 484, 99 S.Ct. 1304, 1310, 59 L.Ed.2d 519 (1979) (Commissioner's consistent interpretation of a statute over time merits "serious deference"); *Hamrick v. United States,* 585 F.2d 1015, 1020 (Ct.Cl.1978) (a Revenue Ruling may be a "determination" by the Secretary for purposes of § 4216(b)(1)).

Courts have upheld the cost-floor rule contained in the Revenue Rulings because these rulings reasonably assume that "a manufacturer will set his wholesale price to recover at least his costs of production." *Strick,* 714 F.2d at 1199; *see Whattoff,* 355 F.2d at 478; *Technicolor Motion Picture Corp. v. Westover,* 202 F.2d 224, 229 (9th Cir.1953); *cf. Boise National Leasing, Inc. v. United States,* 389 F.2d 633, 638–39 (9th Cir.1968) (use of costs to determine "fair

---

**4.** *See supra* note 2.

**5.** Treas.Reg. § 148.1–5(b)(1) provides:
(b) General rule—(1) Sales at retail.
Where a manufacturer, producer, or importer sells an article at retail ... the basis for tax shall be the lower of: (i) the actual price for which the article is sold; or (ii) the highest price for which such articles are sold to wholesale distributors, in the ordinary course

of trade, by manufacturers or producers thereof. ... If [the manufacturer] has no ["established bona fide practice" of] sales to wholesale distributors, a fair market price will be determined by the Commissioner. In any case the price so determined shall not be in excess of the actual price for which the article is sold by him at retail.
26 C.F.R. § 148.1–5(b)(1) (1983).

market price" for purposes of I.R.C. § 4218(e)). Moreover, the drafters of the constructive price provisions contained in section 4216(b)(1) clearly contemplated the possibility of a cost-based method of determining the constructive price. A House Report stated:

> This [constructive sales] price may be established with respect to any particular sale or class of sales, for example, by existing wholesale prices, or by a system of discounts from retail prices, *or by a building up from cost of production,* whichever method may be the most practical.

H.R.Rep. No. 708, 72d Cong. 1st Sess. (1932), *reprinted in* 1939–1 C.B. (Part 2) 457, 480 (emphasis added). The Third Circuit recently undertook a thorough examination of the legislative history of section 4216(b)(1) and concluded:

> Timing of issuance, durability, reliance, consistency of interpretation and degree of congressional scrutiny all support a conclusion that the cost-floor alternative was not contrary to the congressional mandate during the 1954–1978 period.

*Strick,* 714 F.2d at 1200. We agree with this conclusion.

■ Certified argues that the cost floor rule should not be applied to manufacturers that sell at retail and at a loss. This argument is supported by *Quaker City Iron Works, Inc. v. United States,* 256 F.Supp. 450 (E.D.Pa.1966). In *Quaker City Iron Works,* competition had forced the taxpayer manufacturer to sell at retail below cost, resulting in net operating losses for each of six years. The district court held that where a manufacturer sold products below cost over a period of time, application of the "cost-floor" rule conflicted with section 4216(b)(1), which attempts to tax on the basis of a price no higher than the manufacturer could receive at wholesale. 256 F.Supp. at 453–54. The court distinguished *Whattoff,* an Eighth Circuit decision, by arguing that there was no

showing in the earlier case that sales had been made below cost.[6]

The decision in *Quaker City Iron Works* has not been followed, and its reasoning has been questioned. The Third Circuit in *Strick,* while distinguishing *Quaker City Iron Works* on the grounds that the taxpayer before it had not lost money during the relevant period, stated:

> More fundamentally, however, *Whattoff* and analogous cases offer a more persuasive and carefully reasoned analysis of the issues and legislative history. *Quaker City Iron Works* stands almost alone in rejecting a cost-based method of calculating a constructive sales price.

714 F.2d at 1201.

We agree with the Third Circuit, and decline to follow *Quaker City Iron Works.* The statute under which the cost-floor rule was promulgated provides no basis for distinguishing between manufacturers operating at a profit and those operating at a loss. It is reasonable to set a constructive price based on cost, because products are ordinarily sold at a price above cost. Moreover, manufacturers are not taxed on the basis of unrecovered costs because the constructive sales price cannot exceed the actual selling price.

■ Nor does the cost floor rule improperly discriminate against high cost manufacturers. In *F.W. Fitch Co. v. United States,* 323 U.S. 582, 65 S.Ct. 409, 89 L.Ed. 472 (1945), the Supreme Court rejected a discriminatory impact claim. There a manufacturer of cosmetics argued that including advertising and selling expenses in the price on which the excise tax was imposed unfairly discriminated against manufacturers who did their own selling and advertising. The Court found that, in light of differing business methods employed by competing manufacturers, some discrimination was "an unavoidable consequence of an excise tax based on the wholesale selling price." 323 U.S. at 586–87, 65 S.Ct. at 411–12. The Court concluded:

---

6. In *Whattoff,* taxpayers sold at retail only and their manufacturing costs exceeded 75% of the retail sales price. The Eighth Circuit found that computing the manufacturer's excise tax on the basis of cost with an allocation for overhead "reflects a reasonable implementation of [I.R.C. § 4216(b)(1) ] and accompanying regulations." *Whattoff,* 355 F.2d at 478.

Congressional statements relating to the desirability of eliminating discriminations against manufacturers making retail sales cannot be taken as evidence of a desire to prevent the natural inequalities that result when a tax is placed on the wholesale selling price.

*Id.* at 587–88, 65 S.Ct. at 412 (footnote omitted).

Cases upholding the cost-based method of determining a constructive sales price for purposes of section 4216(b)(1) have rejected the discriminatory impact argument. *See, e.g., Strick,* 714 F.2d at 1200–02 (rejecting claim that the cost-floor rule in Revenue Ruling 54–61 put high cost taxpayer at a disadvantage, contrary to legislative intent of uniformity in administering section 4216(b)(1)); *Hamrick,* 585 F.2d at 1019–20 (rejecting taxpayer's assertion that the constructive sales price for retail sales should be computed according to competitor's wholesale price and not according to own costs); *Callis-Thompson, Inc. v. United States,* 1980–1 U.S. Tax Cas. (CCH) ¶ 16,335, at 84,423 (D.Del.) (manufacturer's contention of competitive disadvantage forestalled by *Fitch* ).

Finally, the discriminatory impact argument cuts two ways. Were Certified to prevail in this case, its basis for the excise tax (75% of the retail price) would be lower than that of a manufacturer whose retail price was the same as Certified's but whose costs were less than the retail price but higher than 75% of the retail price. Only by ignoring costs altogether, a position inconsistent with the intent of Congress, could this discriminatory impact be eliminated.

 Certified also argues that the cost-floor rule violates section 4216 by not permitting a manufacturer to determine its tax liability in advance of sale. This argument is without merit. The legislative history of the 1932 Act on which Certified relies addresses the need to avoid retroactive changes in methods of computing the excise tax.[7] It does not require that a manufacturer using an established method of computing the tax be allowed to determine its precise tax liability in advance of sale.[8] *See, e.g., Strick,* 714 F.2d at 1197–1202; *Whattoff,* 355 F.2d at 478; *Callis-Thompson,* 1980–1 U.S. Tax Cas. ¶ 16,335.

AFFIRMED.

---

7. Certified relies on the following language:
 It is essential that the persons who will be called upon to make returns and pay the tax to the Government must know, in advance of the sale, whether the sale is taxable and the amount of the tax liability. Having ascertained the taxability of the sale and the basis upon which the amount of tax is to be computed, they must be able to rely upon the determination. Retroactive imposition of the tax, or change in the method by which the tax is computed, necessarily results in hardship and dissatisfaction, which in turn will bring about the breakdown of the tax.

H.R.Rep. No. 708, 72d Cong. 1st Sess. (1932), *reprinted in* 1939–1 C.B. (Part 2) 457, 479–480.

8. We note that Certified could anticipate its excise tax liability with a limited amount of variance. The company prepared a detailed estimate of costs upon commencing construction of each trailer. Moreover, the tax basis of each trailer could not exceed the actual sales price. These facts suggest that Certified could calculate its excise tax liability to a reasonable degree of certainty.