Fremont G. REDFIELD,
Plaintiff–Appellant,

v.

INSURANCE COMPANY OF NORTH
AMERICA, Defendant–Appellee.

No. 88–6300.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 1, 1990.

Memorandum Filed Sept. 24, 1990.

Order Withdrawing Memorandum
Filed Aug. 6, 1991.

Decided Aug. 6, 1991.

John C. McCarthy, John C. McCarthy and Associates, Claremont, Cal., for plaintiff-appellant.

Gregory B. Tobin, Philadelphia, Pa., for defendant-appellee.

Before D.W. NELSON, BRUNETTI and O'SCANNLAIN, Circuit Judges.

## ORDER

Appellant's petition for rehearing is GRANTED.

The memorandum disposition filed September 24, 1990 is withdrawn. A new disposition will be filed in its stead.

## OPINION

O'SCANNLAIN, Circuit Judge:

This appeal from the district court's order granting relief from judgment pursuant to Federal Rule of Civil Procedure 60(b)(5) in an age discrimination case presents, surprisingly, a question of federal income tax law.

### I

Fremont Redfield brought suit in state court against his former employer, Insurance Company of North America ("ICNA"), alleging violations of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–634, and the California Fair Employment and Housing Act ("FEHA"), Cal.Gov't Code §§ 12900–12996, wrongful discharge (breach of employment contract), breach of the implied duty of good faith and fair dealing, and intentional infliction of emotional distress. After removal to federal court, the district court concluded that ICNA had discriminated against Redfield on the basis of age, in violation of both the ADEA and FEHA, and that ICNA had breached an implied employment contract and that contract's covenant of good faith and fair dealing. Accordingly, the district court awarded Redfield $189,500 in "economic damages," $25,000 in "emotional distress damages," and $75,000 in "punitive damages." The judgment was subsequently upheld on appeal by this court. *See Redfield v. Insurance Co. of North America*, 833 F.2d 1017 (9th Cir.1987) (unpublished disposition).

Pursuant to the district court's order awarding damages to Redfield, ICNA's attorney forwarded five checks to Redfield's attorney in a letter dated March 1, 1988. The first check was for $142,535.50, representing the net amount remaining from the $189,500 "economic damages" award after the sum of $46,964.50 was withheld for federal income tax, Federal Insurance Contributions Act ("FICA") tax, and California state income tax. Two checks were for $75,000 and $25,000, representing punitive damages and emotional distress damages, respectively; ICNA did not withhold taxes from these payments of damages. The remaining two checks were for attorney fees awarded to Redfield in the district court and this court.

Because taxes were withheld from the "economic damages" payment, Redfield refused to acknowledge satisfaction of judgment. ICNA then moved in the district court for relief from final judgment pursuant to Fed.R.Civ.P. 60(b)(5) on the basis that ICNA had paid all the monies due Redfield, and therefore the district court's judgment had been satisfied. In an order entered July 21, 1988, the district court granted ICNA's motion, ruling that ICNA properly withheld federal and state income taxes and FICA taxes.

Redfield now appeals from the district court's order. We review the district court's grant of a Rule 60(b)(5) motion under an abuse of discretion standard. *See Dias v. Bank of Hawaii*, 732 F.2d 1401, 1402 (9th Cir.1984). A district court abuses its discretion by making a clear error of law. *United States v. Washington*, 935 F.2d 1059, 1061 (9th Cir.1991).

### II

Redfield argues that tax withholding was improper because the entire economic damages award, as compensation for personal injuries sustained in what is essentially a tort action, is exempt from taxation.

### A

■ For the purposes of calculating federal income tax, a taxpayer's gross income is defined as "all income from whatever source derived," except as excluded elsewhere in the Internal Revenue Code's Subtitle A ("Income Taxes"). *See* I.R.C. § 61(a) (1988). One specific statutory exclusion from gross income, however, is "the amount of any damages received

(whether by suit or agreement and whether as lump sums or as periodic payments) on account of personal injuries or sickness." *Id.* § 104(a)(2). "Damages received" refers to payments received through prosecution, or the threat of prosecution, of a legal action "based upon tort or tort type rights." 26 C.F.R. § 1.104–1(c) (1990).

The relevant inquiry, then, is "whether the [award] was received on account of personal or non-personal injuries, not whether the damages compensate the taxpayer for economic losses." *Byrne v. Commissioner,* 883 F.2d 211, 214 (3d Cir. 1989) (referring to payment for settlement of personal injury claims). If the "economic damages" award obtained by Redfield was received for personal injuries, then the award would not be taxable under the federal income tax scheme.

### 1

In the past year, two circuits have considered the question posed by this case: whether ADEA damages represent payments for personal injuries excludable from income under section 104(a)(2). Each has concluded that the damages are entirely excludable, even though the award (or some part of it) might be based on lost wages. *See Pistillo v. Commissioner,* 912 F.2d 145 (6th Cir.1990); *Rickel v. Commissioner,* 900 F.2d 655 (3d Cir.1990). We consider whether this circuit should adopt the view taken by the Third and Sixth Circuits.

In *Roemer v. Commissioner,* 716 F.2d 693 (9th Cir.1983), we rejected the Tax Court's longstanding attempt to distinguish between physical and nonphysical personal injuries for the purposes of determining excludability of personal injury damages. *See id.* at 697. Instead, we examined the nature of the claim underlying the award to determine whether damages received were excludable. *Id. Roemer* involved a state law tort suit for defamation, which, we concluded, was a "personal injury" under the applicable state law, thus rendering the entire damages award excludable. *Id.* at 700.

Following our decision in *Roemer,* the Third, Sixth, and Tenth Circuits and the full Tax Court (by a 15–1 vote) also concluded that courts must look to the nature of the claim in order to determine whether damages received by a taxpayer were paid on account of personal injuries. *See Wulf v. City of Wichita,* 883 F.2d 842, 872–73 (10th Cir.1989) (settlement award in civil rights action for wrongful discharge in violation of first amendment was nontaxable); *Bent v. Commissioner,* 835 F.2d 67, 70 (3d Cir.1987) (damage award for violation of first amendment rights was excludable); *Threlkeld v. Commissioner,* 87 T.C. 1294 (1986) (en banc) (defamation damages excludable), *aff'd,* 848 F.2d 81 (6th Cir.1988); *see also Byrne,* 883 F.2d at 214–16 (settlement for Fair Labor Standards Act and state wrongful discharge claims was excludable). Several such opinions have made clear that the presence of "back pay" or "lost wages" in the calculation of damages is irrelevant to their taxability where the nature of the claim is tort-like, rather than purely contractual. *See, e.g., Burke v. United States,* 929 F.2d 1119, 1122–24 (6th Cir.1991) (title VII sex discrimination damages, though calculated from back pay, were excludable under section 104); *Bent,* 835 F.2d at 70 (settlement award was excludable although based in part on taxpayer's lost wages); *Metzger v. Commissioner,* 88 T.C. 834 (1987) (same holding as *Burke* as to portion of settlement payments attributable to discrimination on basis of sex and national origin in violation of title VII), *aff'd,* 845 F.2d 1013 (3d Cir.1988) (unpublished disposition).

*Rickel* and *Pistillo* are the first cases to apply *Roemer* and its progeny to age discrimination claims. In *Rickel,* the taxpayer (Rickel), after demotion and later termination, filed an ADEA action against his employer, praying for reinstatement, back wages and other lost compensation, liquidated damages, and attorney fees. *See* 900 F.2d at 656–57. After trial, and while the jury deliberated, the parties reached a settlement, contingent upon the jury's answers to particular interrogatories. *Id.* at 657. Ultimately, the settlement amount was determined to be $180,000, which was

not allocated among Rickel's various prayers for relief. *Id.* The Commissioner asserted that the settlement monies received during the relevant tax year ($105,000) were taxable. *Id.*

In *Pistillo*, the terminated taxpayer (Pistillo) brought an age discrimination suit under the ADEA, various civil rights statutes, and two amendments to the United States Constitution. Pistillo requested injunctive relief, reinstatement, back pay, and attorney fees. *See* 912 F.2d at 146–47. At the end of trial, the district court instructed the jury that it could award Pistillo back pay, liquidated damages, and compensatory damages. *Id.* at 147. The jury awarded Pistillo $55,000 in compensatory damages, and the district court awarded him $22,432.83 in attorney fees. While the judgment was on appeal, the parties reached a settlement whereby the employer paid Pistillo $81,562.58, including $22,706.18 for attorney fees and $856.40 for court reporter fees. The Commissioner contended that the $58,000 received by Pistillo in the settlement was taxable. *Id.*

In each case, the appellate court concluded that the settlement figure was excludable from the taxpayer's income because the underlying claim, age discrimination, was tort-like. *See Pistillo*, 912 F.2d at 149–50; *Rickel*, 900 F.2d at 662–64. As the court stated in *Rickel*,

> the duty of an employer to refrain from discriminating against employees on the basis of their age arises by operation of a statute. Society has made the moral and economic determination that as a matter of law it will not abide such discrimination. Such a duty arises even in the absence of a written employment contract and despite the existence of either contrary terms in such a contract or conflicting common law employment-at-will principles.

*Id.* at 662. Nothing in the ADEA reflects a congressional attempt to rewrite the terms of employment contracts. *See id.* ADEA

actions are analogous to other federal discrimination causes of actions, many of which have been described in explicitly tort-like language. *See id.* at 662–63 (citing numerous cases). "To effectuate the purposes of both the ADEA and the [Internal Revenue Code], we must make the victims of arbitrary age discrimination whole by providing equal recognition to the substantial indignities and personal injuries they have suffered." *Pistillo*, 912 F.2d at 150.

ICNA protests that the *Rickel* and *Pistillo* line of authority conflicts with *Thompson v. Commissioner*, 866 F.2d 709 (4th Cir.1989). We disagree. In *Thompson*, the taxpayer (Thompson) received liquidated damages and an award of back pay under title VII and the Equal Pay Act for her employer's discriminatory undercompensation of Thompson for services rendered. While the court regarded the liquidated damages as a nontaxable recovery in a tort-type action, it treated the back pay award differently:

> Thompson performed essentially the same work as her male co-workers for which she should have received equal pay. The back pay award was simply recovery for earned, but unpaid, wages which distinguishes her award of back pay from awards for lost wages or lost income in traditional personal injury/tort actions. She received compensation for services rendered whereas a tort plaintiff receives compensation for the inability to earn an income due to the tortious action of a defendant. *See Threlkeld v. Commissioner*, 848 F.2d 81 (6th Cir.1988); *Bent v. Commissioner*, 835 F.2d 67 (3d Cir.1987); *Roemer v. Commissioner*, 716 F.2d 693 (9th Cir.1983).

866 F.2d at 712. From this reasoning, it would seem that even the Fourth Circuit would declare a recovery for "back pay" or "lost wages" of a *terminated* employee, such as Redfield here and the taxpayers in *Rickel* and *Pistillo*, to be excludable from income.[1]

---

1. For the same reason, *Bowman v. United States,* 824 F.2d 528 (6th Cir.1987) (settlement of racial discrimination action), is distinguishable. In *Bowman,* it apparently was assumed that

"earned" back pay would be subject to federal FICA taxes. In the case before this court, we are not faced with an award of back pay for work actually performed; whether this circuit

We adopt the reasoning of the Third and Sixth Circuits and hold that age discrimination damages are tort-type recoveries for personal injuries. As such, they come within the purview of I.R.C. § 104(a)(2), and are excludable from "gross income" for the purposes of federal income tax.

2

While we find the reasoning of *Rickel* and *Pistillo* persuasive, we recognize that these cases may be distinguished from the present controversy. We must determine whether any of the differences from *Rickel* and *Pistillo* compel a different result on the taxability question.

■ One difference between the present dispute and *Rickel* and *Pistillo* is that the latter two cases involve settlement payments rather than damage awards. However, a close reading of *Rickel* and *Pistillo* demonstrates that the two authorities should not be distinguished on this ground. Although the intent of the payor may alter the characterization of a settlement for tax purposes, *see Roemer*, 716 F.2d at 697 n. 3; *Knuckles v. Commissioner*, 349 F.2d 610, 612–13 (10th Cir.1965), neither *Rickel* nor *Pistillo* involved any inquiry into the payor's intent. On the contrary, both cases focused exclusively upon the tort-like aspects of an ADEA claim. Each case cited "damages" cases and "settlement" cases interchangeably, *see, e.g., Pistillo*, 912 F.2d at 149; *Rickel*, 900 F.2d at 659–61, and neither gave any indication that the posture of the case had any impact on the result. In fact, in *Rickel* the court went so far as to state: "we hold that just as in the case of a physical personal injury, all the *damages* received by the taxpayer on account of age discrimination are excludable under § 104(a)(2)." *Id.* at 664 (emphasis added). In these circumstances, we regard the teaching of *Rickel* and *Pistillo* as equally applicable to damage awards as to settlement payments in age discrimination suits.

■ Nor do we consider this case distinguishable from *Rickel* and *Pistillo* on account of the additional state FEHA, wrongful discharge, and breach of implied covenant claims presented here, although these extras do add a level of complexity to the analysis. Nothing in the district court's award indicates that any portion of the $189,500 "economic damages" was *not* attributable to violation of the ADEA. Even if we were to posit that some portion of the "economic damages" was based upon a contract measure of damages pursuant to another of Redfield's causes of action, there is no indication in the record that these same damages would not have been available as ADEA personal injury damages.

Perhaps more significantly, Redfield's complaint and the district court's findings and conclusions do not leave room for allocation of any portion of the "economic damages" award to non-tort damages. FEHA age discrimination claims, as statutory causes of action, provide for tort-type damages. *Commodore Home Systems v. Superior Court*, 32 Cal.3d 211, 221, 649 P.2d 912, 918, 185 Cal.Rptr. 270, 276 (1982) ("in a civil action under the FEHA, all relief generally available in noncontract actions ... may be obtained"); *see* Cal.Civ.Code § 3333 (West.1970) (non-contract damages are "the amount which will compensate for all the detriment proximately caused thereby"). Any portion of the "economic damages" award which was based upon the violation of FEHA would be treated no differently than any other tort recovery.

Even Redfield's claim for wrongful discharge for breach of employment contract and his claim for breach of the implied covenant were alleged as tort causes of action, for which Redfield prayed for tort damages. Complaint at 6–7, *Redfield v. Insurance Co. of North America*, No. 416972 (Cal.Super.Ct. for Orange County Nov. 28, 1983) (paragraphs 25 & 28), *attached to* Petition for Removal, *Redfield v.*

---

should adopt the *Thompson–Bowman* approach to the taxability of such an award awaits a more fitting case. *See Rickel*, 900 F.2d at 664 n. 16 (distinguishing *Thompson* with the same cave-

at); *see also Pistillo*, 912 F.2d at 150 n. 6 (stressing the *Bowman* parties' agreement that the settlement constituted back wages for past employment).

*Insurance Co. of North America,* No. CV 84–0321–WMB–(Kx) (C.D.Cal. Jan. 17, 1984). Thus, any damages awarded pursuant to these causes of actions should also be treated as tort damages.[2]

In this case, there is no reason not to consider all of the "economic damages" awarded Redfield to be for personal injuries suffered as a result of his unwarranted, premature termination.[3] Thus, in all significant respects, this case is similar to *Rickel* and *Pistillo:* each involves a tort-like recovery for personal injuries sustained by an employer's age discrimination. We conclude that Redfield's "economic damages" award from his action was excludable from "gross income" under section 104(a)(2) of the Internal Revenue Code.

### B

Having concluded that no portion of Redfield's "economic damages" award was taxable as federal income, we must examine whether a different result obtains for FICA or state income tax purposes. If so, then the portions of ICNA's withholding intended for these programs may have been correctly withheld.

■ For the purposes of FICA, a taxpayer's "income" is taxed by an employer withholding a certain percentage of wages. *See* I.R.C. § 3101(a) (1988). Our conclusion that Redfield's "economic damages" were excluded from the definition of "gross income" dictates a conclusion that the sums were not subject to FICA withholding ei-

ther. *Anderson v. United States,* 929 F.2d 648, 654 (Fed.Cir.1991) (payments which are excluded from section 61's definition of "gross income" are not subject to FICA withholding). Personal injury damages are simply not "income" as used in the FICA statutes.[4]

■ California requires the withholding from an employee's wages of the estimated state income tax due from the inclusion of those wages in the employee's "gross income." Cal.Unemp.Ins.Code § 13020(a) (West 1986). "Gross income" for withholding purposes incorporates numerous specific exclusions. *See id.* § 13006 (West Supp. 1991) (defining "gross income" and confirming applicability of specific exclusions listed in Revenue & Taxation Code). Most relevant to the discussion is the statutory provision that "[i]tems that are specifically excluded from gross income shall be determined in accordance with Part III of Subchapter B of Chapter 1 of Subtitle A of the Internal Revenue Code[ ], except as otherwise provided in this article." Cal.Rev. & Tax.Code § 17131 (West Supp.1991) (footnote referencing I.R.C. §§ 101–135 omitted); *see also Title Ins. Co. v. State Bd. of Equalization,* 231 Cal.App.3d 626, 282 Cal. Rptr. 570 (1991) (looking to federal law to determine whether title insurance premium payments were "gross income" for state income tax purposes). Section 104(a) of the Internal Revenue Code falls within the designated part, and no other California statute removes personal injury damages from the list of exclusions from gross income.

**2.** At the time that the district court made its award of damages to Redfield, California law permitted recovery in tort for wrongful discharge under a theory of breach of the implied covenant of good faith and fair dealing. *See Cleary v. American Airlines, Inc.,* 111 Cal.App.3d 443, 168 Cal.Rptr. 722 (1980). Subsequent to the district court's entry of the order that is on appeal to this court, the California Supreme Court ruled that tort damages were not available in the context of an employment contract for breaches of the implied covenant. *See Foley v. Interactive Data Corp.,* 47 Cal.3d 654, 765 P.2d 373, 254 Cal.Rptr. 211 (1988); *see also Mundy v. Household Fin. Corp.,* 885 F.2d 542, 544 (9th Cir.1989) (discussing impact of *Foley*). *Foley,* however, cannot retroactively alter the character of damages already awarded Redfield and affirmed on appeal.

**3.** *Cf. Metzger,* 88 T.C. at 846 (the portion of the settlement award specifically allocated for the taxpayer's breach of contract claim by the parties assumed to be taxable, while the rest was regarded as nontaxable as recovery for discrimination on the basis of sex and national origin).

**4.** Such damages, falling outside the definition of "income," could not be regarded as "wages" for the purposes of I.R.C. § 3121(a) either. *See Rowan Cos., Inc. v. United States,* 452 U.S. 247, 254, 101 S.Ct. 2288, 2293, 68 L.Ed.2d 814 (1981) (noting that " 'wages' is a narrower concept than 'income' "); *Royster Co. v. United States,* 479 F.2d 387, 390 (4th Cir.1973) ("Wages are merely one form of income.").

Thus, as with FICA, withholding of state income taxes from personal injury damages is not appropriate where the damages are excluded from "gross income" for federal income tax purposes.

We conclude that ICNA's withholding of amounts for FICA and for state income taxes was no more justified than its withholding for federal income taxes. Redfield should have received full payment of his "economic damages" award before ICNA was entitled to a grant of relief from final judgment under Rule 60(b)(5).

### III

 Having concluded that the district court erred in concluding that the "economic damages" portion of the judgment represented taxable income, we must also conclude that the district court abused its discretion in granting ICNA's Rule 60(b)(5) motion. The district court's ruling was premised on an inaccurate reading of the ADEA and the tax codes.[5]

In so holding, we do not foreclose the possibility that ICNA may yet be entitled to a grant of its Rule 60(b)(5) motion. When this appeal was argued before this court, counsel for Redfield indicated that his client had already obtained a refund from the federal government for some or all of the amount withheld from the original award.[6] If on remand the district court learns that Redfield has received the full amount of his award from the ICNA payments and refunds or credits from various tax authorities in the aggregate, then ICNA's motion for relief from final judgment may yet be granted.

REVERSED and REMANDED.

---

5. We thus need not consider Redfield's second contention, that the district court abused its discretion in granting ICNA's Rule 60(b)(5) motion because there was no finding as to what portion of the "economic damages" award represents back pay.

6. Counsel's statement subsequently has been "clarified" to assert simply that Redfield had claimed a tax credit for the withheld sums, the validity of which has not yet been determined.