**William R. KLEIN, Plaintiff,**

v.

**SECRETARY OF TRANSPORTATION, UNITED STATES DEPARTMENT OF TRANSPORTATION, Defendant.**

**No. CS–90–261 RJM.**

United States District Court, E.D. Washington.

Aug. 18, 1992.

**1520**

Gregory Arpin and Richard A. Mount of Layman, Loft, Arpin & White, Spokane, WA, for plaintiff.

Stephanie J. Johnson, Susan Maloney, U.S. Attorney's Office, Spokane, WA, for defendant.

## MEMORANDUM DECISION

ROBERT J. McNICHOLS, District Judge.

After a five day bench trial, the Court carefully reviewed its notes and the exhibits. The following memorandum constitutes the Court's Findings of Fact and Conclusions of Law.

## STATEMENT OF THE CASE

The following recitation of facts supplements the agreed facts set forth by the parties in their Pretrial Order. (CR 31). Before retiring in 1981, Mr. Klein spent twenty-six years in the Navy, primarily repairing and maintaining various Navy radar systems. His service record can best be described as outstanding. Evaluations by superior officers glowingly describe his skill in solving equipment problems, his willingness to go the extra mile to get the job done, and his talent in working with and motivating others. Mr. Klein was consistently ranked in the top 5% of his field and recommended for promotions.

After leaving the Navy, Mr. Klein worked for RCA as an electronics technician from October 1981 to November 1984, and at Instrument Control Services (ICS) from November 1984 to September 1987. At both companies, he continued maintaining and repairing radar and aircraft control systems, and at ICS he supervised up to six other maintenance technicians. While working in the private sector, Mr. Klein continued his education in radar and aircraft control systems maintenance and repair, completing courses in November and December 1981, February 1982, and April 1986. He left RCA when the government contract he was working on terminated, and left ICS after being laid off due to manpower cutbacks.

In 1988, Mr. Klein, then fifty-one, began applying for electronics technician positions. He particularly focused on the Federal Aviation Administration (FAA) in the Northwest Mountain Region (NMR) at a requested GS–9 pay scale. Mr. Klein apparently wished to return to the Northwest as both he and his wife were originally from Montana. Because of his prior military service, Mr. Klein was considered under the Veterans Readjustment Appointment (VRA) authority. According to Richard Wilder, who was effectively in charge of hiring Seattle area electronics technicians in 1988 and 1989, VRA candidates could be considered and hired for FAA openings at any time, even if their applications were submitted late.

The openings for which Mr. Klein applied were announced under both the Merit Promotion Program (MPP) and the Delegated Authority (DELA) program. Both programs rate applicants to determine if they are suitably qualified. Qualified MPP candidates would be placed on selection lists without their rating scores, and sometimes MPP selection officials would be furnished with more than one list of candidates for a single announcement. For DELA announcements, at least three of the most qualified candidates would be listed on short selection rolls with their scores in order of rating.

The scale on which applicants for electronics technician positions were rated was based on a scale of zero to four, four being the highest and given only to candidates considered best qualified. There were five categories: electronics theory, repairing and troubleshooting skills, ability to com-

municate in writing, mathematics, and the use of test equipment. Rating officials were required to score an applicant lacking in recent experience or education at the next lowest level.[1] Mr. Klein received the highest scores possible in each category each time he was ranked, with the exception of one "three" he received in July 1988 in the written communication category. These raw scores were then translated to a score based on a scale of one hundred. Because of his status as a veteran, Mr. Klein was entitled to an additional five points, resulting in transmuted scores of 102 and 105.

From 1988 to 1990, there were several instances of what John Selberg, an FAA human resources official, described as "serious violations" of the FAA hiring procedures [2], as well as other inconsistencies in how applications were processed. For example, if one promotional candidate on a MPP selection list is interviewed, all must be interviewed, and interviews, if feasible, were encouraged for all qualified applicants. However, for ANM–88–135, Raymond Walsh, an apparently qualified, fifty year old promotional candidate with a transmuted rating of 105, was never interviewed while younger men with lower ratings on the same lists were, and were subsequently hired.[3]

The procedural rules provided that rating officials should not be involved in selection. However, Mr. Wilder both rated and selected candidates for ANM–88–135. Other rules proscribed any appearance of preselection, but Mr. Wilder hand-wrote in the name of Gary Baines on the ANM–88–135 selection list and ultimately hired Mr. Baines for one of the ANM–88–135 positions.[4] FAA records of prospective candidates' applications, qualifications, and scores that were supposed to have been kept for two years were untimely destroyed.

Other curious incidents did not involve violations of procedure. Mr. Selberg told Mr. Klein he would forward his application for the positions in Montana and Wyoming announced by 89–DELA–003, but neglected to do so.[5] The government employee investigating Mr. Klein's allegations of age discrimination, Carl Chesley, was told by Herb Johnson, the Montana assistant sector manager, that only one hire, James Heckathorn, age forty-six, had been made for ANM–88–135. Mr. Chesley was not told of the three other hires, including Mr. Baines, who all rated at least eleven points lower than Mr. Klein's lowest score and were all under thirty.

FAA officials testified one factor weighing against Mr. Klein was his past supervisory experience, which they said would make it difficult for him to work in a lower level position. However, several successful candidates also had recent and significant supervisory experience. Mr. Heckathorn, prior to 1981, was a crew chief and "crew supervisor" over up to twelve people.[6] Before being hired by the FAA, Mr. Huff's most recent experience was "Configuration Management/Quality Assurance Manager", prior to which he was a "Supervisor." [7] Before 1988, Mr. Wolfe had been

1. *See* Plaintiff's Ex. 31.

2. As set forth in the Order governing those procedures. *See* Plaintiff's Ex. 29.

3. Despite making several selection lists, Mr. Klein, a highly qualified VRA candidate with top ratings, was never interviewed, apparently due to an absence of feasible opportunities.

4. Mr. Baines was twenty-nine when hired, and had received a rating score of 91. Although he was hired for a GS–9 wage scale, Mr. Baines had indicated on his application that he would accept no less than a GS–10. Mr. Baines also submitted all or part of his application late, sixteen days after the announcement's closing date.

5. As a result, Mr. Klein's materials were not reviewed. Nine people were hired for these positions. The oldest, Michael Sparks, was thirty-nine and had a transmuted score of 105. The next oldest was Steven Hopkins, thirty-five, with a transmuted score of 102. Mr. Klein's lowest rating was at least five points higher than the scores of the other successful hires.

6. Plaintiff's Ex. 41. While in the military and stationed at the Mica Peak radar installation, Mr. Heckathorn had been a "Crew Chief," and responsible for training personnel. Mr. Heckathorn was stationed at Mica Peak from September 1971 to November 1975. He was hired in 1988 to return there as an entry-level subordinate.

7. Plaintiff's Ex. 45.

a Navy "Aviation Technician and Supervisor" for six years and a "Clerk Typist Supervisor" from 1970 to 1976.[8]

Mr. Johnson stated successful applicants had desirable "recency" of education and hands-on experience Mr. Klein lacked, although he never reviewed Mr. Klein's qualifications. Testifying FAA officials indicated that, at the time, they felt younger hires were better able to pick up training and better for long-term section stability. Plaintiff's Exhibit 71 illustrates the results of 1988–1990 hires on the average age of NMR employees. As shown by the exhibit, while the number of employees increased, the average age dropped, as did the percentage of employees eligible for optional retirement within five years.

From 1988 to the portion of 1990 prior to the filing of this lawsuit, ninety electronics technicians out of a total 1298 applicants were hired by the FAA for the NMR. The ninety hires came exclusively from the pool of 1207 applicants under the age of fifty. Simple math indicates approximately one out of every fourteen applicants under the age of fifty were hired, while none out of ninety-one applicants over fifty were successful. Expert testimony conflicted on the statistical significance of these hiring figures. Plaintiff's experts, Dr. Scontrino and Dr. Ott, applied the Chi Square test in testifying that the possibility these hiring results occurred by chance was less than 2%, while defendants' expert, Dr. Abbott, applied the Fisher Exact Test in testifying the possibility of these results occurring by chance was over 6%. Which statistical method was most reliable and accurate was disputed.

Examining the hard numbers, in 1988 and 1989, a total of eight MPP job announcements resulted in twelve persons hired. During this same period, there were nine DELA announcements for which 25 persons were hired. All hired under these announcements were under fifty years old. Sixteen were below thirty, eighteen were in their thirties, two were forty and forty-one, and one was forty-six.[9] Of the thirty-seven

total hires, thirty were rated lower than 102. For 1990, there were no MPP announcements, although there was a DELA announcement for which sixty-four hires were made. Of those hired, twenty-six were in their twenties, twenty-five in their thirties, five in their early forties, and three were forty-six. Three applicants over the age of fifty were hired, although they were brought on board after Mr. Klein's age discrimination suit had been filed.

During the period in question, Mr. Klein attempted without success to find work as an electrical technician with many other employers. Mr. Klein has found part-time work as a janitor.

## DISCUSSION

A: Claims Under the Age Discrimination in Employment Act (ADEA)

■ It is unlawful for an employer to fail or refuse to hire any individual because of the individual's age. 29 U.S.C. § 623(a)(1). All personnel actions affecting applicants for employment who are at least 40 years of age in executive agencies shall be made free from any discrimination based on age. 29 U.S.C. § 633a(a). *See also* 29 U.S.C. § 631(b). Plaintiffs alleging discrimination under the ADEA may proceed according to either of two theories: disparate treatment or disparate impact. *Foster v. Arcata Associates, Inc.*, 772 F.2d 1453, 1458 (9th Cir.1985), *cert. denied*, 475 U.S. 1048, 106 S.Ct. 1267, 89 L.Ed.2d 576 (1986). Mr. Klein qualifies for protection under the ADEA, and argued the FAA practices constituted both disparate treatment and disparate impact.

I: *The Role of Statistical Evidence*

■ As noted in the recitation of facts, both parties presented statistical evidence in support of their positions. Statistical evidence is not probative if the data is small or incomplete, and when statistical evidence is used to show disparate impact,

---

**8.** Plaintiff's Ex. 47.

**9.** *See* Defendant's Ex. 106. Full information on John Wolfe, a 1988 MPP hire, was not available.

The forty-six year old hire was James Heckathorn.

the statistical disparities must be sufficiently substantial to raise an inference of causation. *Shutt v. Sandoz Crop Protection Corp.*, 934 F.2d 186, 188 (9th Cir. 1991).

A .05 level of statistical significance indicates that the demonstrated relationship between the variables would occur in a random sample five times out of one hundred and is generally recognized as the point at which statisticians draw conclusions. *White v. City of San Diego*, 605 F.2d 455, 460 (9th Cir.1979); *Contreras v. City of Los Angeles*, 656 F.2d 1267, 1273 (9th Cir.1981), *cert. denied*, 455 U.S. 1021, 102 S.Ct. 1719, 72 L.Ed.2d 140 (1982). The .05 figure has been questioned outside the Ninth Circuit. *Vuyanich v. Republic National Bank*, 505 F.Supp. 224, 272 (N.D.Tex.1980), *mod. in part, reh. den., en banc*, 521 F.Supp. 656 (N.D.Tex.1981), *vacated on other grounds*, 723 F.2d 1195 (5th Cir.1984), *reh. den., en banc*, 736 F.2d 160 (5th Cir.1984), *cert. denied*, 469 U.S. 1073, 105 S.Ct. 567, 83 L.Ed.2d 507 (1984). (.05 is commonly used but purely arbitrary; less significant results may be suggestive and courts should be flexible).

## II: *Disparate Treatment*

The disparate treatment theory is appropriately employed by aggrieved parties claiming under the ADEA that they were intentionally treated less favorably because of their age. *Foster*, 772 F.2d at 1458. Disparate treatment claims involve a shifting burden of proof. The plaintiff bears the initial burden of persuading the trier of fact by a preponderance of the evidence that there has been discrimination, and must first make out a prima facie case. *Foster*, 772 F.2d at 1458–59.

A prima facie case of disparate treatment is established from the following requirements: (1) plaintiff belongs to a protected class; (2) plaintiff applied and was qualified for a job for which the employer was seeking applicants; (3) despite being qualified, plaintiff was rejected; and (4) after plaintiff's rejection, the position remained open and the employer continued to seek applications from persons of comparable qualifications. *Williams v. Edward Apffels Coffee Co.*, 792 F.2d 1482, 1485 (9th Cir.1986). The parties have acknowledged that Mr. Klein has presented a prima facie case of disparate treatment.

If a prima facie case is established, the duty of going forward shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the adverse employment decision. *Foster*, 772 F.2d at 1459. This is a light burden. If the defendant succeeds, the responsibility reverts to the plaintiff to negate the defendant's excuse by showing the proffered reason is only a pretext for discrimination, *Id.*, and that age was a determining factor in the adverse employment decision. *Cassino v. Reichhold Chemicals, Inc.*, 817 F.2d 1338, 1343 (9th Cir.1987), *cert. denied*, 484 U.S. 1047, 108 S.Ct. 785, 98 L.Ed.2d 870 (1988).

Plaintiffs claiming disparate treatment must also show the existence of discriminatory intent. *Foster*, 772 F.2d at 1458. Such motive may be inferred in some situations from the mere fact of differences in treatment. *Id.*

Defendants claimed one of the significant reasons why Mr. Klein was not hired was his lack of recent hands-on experience and education. "Recency," as the parties have termed it, is a valid consideration for employers making hiring decisions. *See Sakellar v. Lockheed Missiles and Space Co.*, 765 F.2d 1453, 1456–57 (9th Cir.1985), *cert. denied*, 474 U.S. 1084, 106 S.Ct. 856, 88 L.Ed.2d 896 (1986); *Coopersmith v. Roudebush*, 517 F.2d 818, 823 (D.C.Cir.1975).

The government has successfully met the shifted burden of articulating legitimate reasons for its employment decisions during the years in question, and Mr. Klein has in turn presented rebutting evidence that could lead a finder of fact to conclude the government's justifications for its hiring decisions are pretextual. Plaintiff must prove more than pretextual justifications for success on the basis of disparate treatment. A necessary element for disparate treatment is proof the government intended to discriminate against the particular plaintiff, and Mr. Klein's evidence falls short.

Mr. Klein also argues the FAA's hiring decisions had a disparate impact on applicants over the age of fifty. While insufficient to show he was singled out for disparate treatment, the evidence of irregularities, inconsistencies, and rule violations presented by Mr. Klein does indicate the FAA displayed a marked tendency towards favoring younger candidates.

### III: Disparate Impact

 The necessary premise of the disparate impact theory is that some employment practices, adopted without a deliberately discriminatory motive, may in operation be functionally equivalent to intentional discrimination. *Watson v. Fort Worth Bank and Trust,* 487 U.S. 977, 987, 108 S.Ct. 2777, 2784, 101 L.Ed.2d 827 (1988). These claims involve employment practices that are facially neutral in their treatment of different groups, but in fact deal more harshly with one group than another. *Sakellar,* 765 F.2d at 1456. To establish a prima facie case of disparate impact, the plaintiff must show that a neutral practice had a significant discriminatory impact upon a protected class. *Id.*

 Mr. Klein established a prima facie case of disparate impact, which involves a shifting burden of proof similar to disparate treatment. Once a plaintiff presents a prima facie case, the burden shifts to the employer to show the practice has a manifest relationship to employment. *Id.* If the employer succeeds, a plaintiff may still prevail upon showing the practice was a mere pretext for discrimination. *Id.* Disparate impact may successfully be proved without showing the discriminatory intent required by disparate treatment claims.

 The defendants argued the objective rating of candidates and their resulting scores should be, and were, given limited weight when selecting candidates. Defendants suggested subjective criteria, such as a candidate's personality, are more important considerations when hiring. Subjective or discretionary employment practices may be analyzed under the disparate impact theory in appropriate cases. *Watson,* 487 U.S. at 991, 108 S.Ct. at 2787.

The Ninth Circuit views substantial reliance on subjective criteria with suspicion.

Subjective job criteria present potential for serious abuse and should be viewed with much skepticism. Use of subjective job criteria not only has, in many instances, a disparate impact on minorities, but also provides a convenient pretext for discriminatory practices. Subjective criteria may easily be asserted as the reason for an adverse employment decision when, in fact, the reason was discriminatory. Moreover, where the job in question involves skills which are primarily physical or mechanical, or are tangible or objective in nature, ... it is more likely that subjective criteria can be used as an excuse for discrimination.

*Nanty v. Barrows Co.,* 660 F.2d 1327, 1334 (9th Cir.1981).

The facts indicate age was a significant factor in the NMR hiring decisions during the years in question. Qualified candidates over the age of fifty were consistently passed by in favor of younger candidates. Successful candidates often had lower ratings and less experience than the rejected older candidates. Several major hiring rules were broken in order to achieve an overall younger workforce in the NMR, and older candidates were uniformly not extended the consideration and assistance received by younger applicants.

Factual irregularities, such as the withholding of complete information from Mr. Chesley, the failure to pass on Mr. Klein's materials for 89–DELA–003, the circumstances surrounding the hiring of Mr. Baines, and many other examples support this conclusion. The statistical evidence is also significant. The possibility that younger candidates were consistently hired by chance or fortune over older candidates is remote at best.

While Mr. Klein is unable to successfully prove disparate treatment, he has proved the hiring practices of the FAA in the NMR from 1988 to 1990 had a definite disparate impact on qualified applicants over the age of fifty. Having prevailed on this claim, Mr. Klein is entitled to an appropriate award of damages.

## B: Available Remedies and Damages

In an action brought to enforce the ADEA, the court has jurisdiction to grant the legal or equitable relief appropriate to effectuate the ADEA's purposes. 29 U.S.C. § 633a(c). Actions pursued under Section 633a are subject only to the provisions of that section, and Section 631(b), which limits the Section 633a action to individuals who are at least 40 years of age. 29 U.S.C. § 633a(f).

As an initial matter, the appropriate wage scale must be determined for evaluating Mr. Klein's damages. Evidence was presented calculating the damages on both GS–7 and GS–9 pay scales, the levels at which most electronic technicians start with the FAA. Mr. Klein has proved discriminatory hiring practices dating back to at least 1988 with the ANM–88–135 hires, and almost all hires in 1988 started on a GS–9 scale.[10] For Mr. Klein, a highly qualified candidate with an excellent work history and service record, it is appropriate to base his damages on entry in 1988 at the GS–9 level.

Another preliminary matter is whether a wage-related damage award must be reduced by the income tax that would have been collected. The court in *Redfield v. Insurance Co. of North America*, 940 F.2d 542 (9th Cir.1991), addressed the question of whether a successful age discrimination plaintiff's award of economic damages was exempt from tax withholdings. The court determined that economic damages recovered in age discrimination suits are essentially personal injury damages and therefore excludable from taxable gross income. *Redfield*, 940 F.2d at 547–48. Under *Redfield*, Mr. Klein's damages need not be reduced to account for tax withholding.

### I: *Back Pay, Front Pay, and Employment*

Economic damages for a successful ADEA plaintiff are divided into the categories of back-pay and front-pay, and ADEA plaintiffs must attempt to mitigate their damages by exercising reasonable care and diligence in seeking other employment. *Cassino*, 817 F.2d at 1345. Back pay may be awarded successful claimants, but the amount must be offset by the plaintiff's actual earnings plus what plaintiff would have earned if reasonable mitigation efforts had been made. *Id.*

Directing an offending employer to hire a successful plaintiff is not a mandatory remedy but lies within the discretion of the trial court after careful consideration of the particular facts of the case. *Cancellier v. Federated Dept. Stores*, 672 F.2d 1312, 1319 (9th Cir.1982), *cert. denied*, 459 U.S. 859, 103 S.Ct. 131, 74 L.Ed.2d 113 (1982). Alternatively, front-pay is considered appropriate when granting employment is not feasible because of hostility between the parties or lack of a suitable position for the plaintiff. *Cassino*, 817 F.2d at 1346–47. Front pay is an award of future lost earnings to make a victim of discrimination whole, and must also be reduced by the amounts plaintiff earned or would have earned using reasonable mitigation efforts. *Id.* An award of front pay is intended to be temporary, and does not contemplate a plaintiff will sit idly by and be compensated for doing nothing. *Id.*

The FAA stated it would rather hire the plaintiff than pay damages for front-pay. Mr. Klein indicated he no longer wished to work for the FAA and would only take a job with the agency if one was available in Spokane. This presents the question whether a suitable position in Spokane exists. Other questions present themselves. Has Mr. Klein been looking for employment suited to his skills and abilities, and if he has, does he intend to continue? Should an award of front-pay encompass all future work years until retirement, or is a different duration appropriate? What effect should Mr. Klein's continuing as a janitor without looking for electronics work have on the valuation of front-pay?

---

**10.** A few started at the GS–7 or GS–11 scales. At least one hire, twenty-seven year old Elvin Wilson who rated 97, started at a GS–12.

Mr. Klein is entitled to an award for past and future loss although the proper amount and nature of his relief are unclear. It would be helpful if the parties would provide the Court with additional information or agreements on the appropriate nature and scope of Mr. Klein's award, and this information may be presented without prejudice to either party's right to appeal. If the parties are unable to agree on the appropriate remedy or amounts, the Court will determine the issues.

## II: *Attorney's Fees*

 Courts addressing the issue of whether attorney's fees and costs are recoverable in an action under Section 633a have consistently awarded fees incurred at the judicial level while refusing to award fees incurred at the administrative level. In *Sterling v. Lehman*, 574 F.Supp. 415, 417 (N.D.Cal.1983), the court found that in light of the "make whole" policy of the ADEA, an award of attorney's fees for plaintiff's judicial proceedings is necessary to effectuate the purposes of the Act. *See also Kennedy v. Whitehurst*, 690 F.2d 951, 963 (D.C.Cir.1982); *Palmer v. General Services Admin.*, 787 F.2d 300, 303 (8th Cir. 1986) (Heaney, J., dissenting to majority's refusal to award fees for administrative proceedings and collecting cases approving award of fees for judicial proceedings); *De Fries v. Haarhues*, 488 F.Supp. 1037, 1044–45 (C.D.Ill.1980); *Lowenstein v. Baldridge*, 38 Fair Empl.Prac.Cas. 466, 468–69 (D.D.C. 1985). Mr. Klein is entitled to an award of reasonable attorney's fees incurred as a result of bringing this action.

## CONCLUSION

Considering the procedures followed by the FAA in hiring, if the evidence here does not prove age discrimination, it is difficult to imagine any set of circumstances that could. The parties shall provide the Court with additional information on the appropriate nature and scope of Mr. Klein's remedy, which shall include an award of reasonable attorney's fees incurred by Mr. Klein in the judicial proceedings.

IT IS SO ORDERED.