Michael L. RICE and Billie M. Rice, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. No. S-92-518 DFL/JFM.

United States District Court, E.D. California.

March 15, 1993.

policy.

**1242**

G. Edward Diener, Burnett Burnett and Allen, San Jose, CA, for plaintiffs.

Henry C. Darmstadter, U.S. Dept. of Justice, Trial Atty., Tax Div., Washington, DC, for defendant.

## MEMORANDUM OPINION AND ORDER

LEVI, District Judge.

Plaintiffs Michael and Billie Rice sue the federal government for a refund of $114,791 in income taxes paid in 1988 and 1989. The parties have cross-moved for summary judgment. The case presents the question of whether a damage award on a claim under the Age Discrimination in Employment Act ("ADEA") is taxable income.

**I**

Michael Rice sued his former employer, Stauffer Chemical Company, and two Stauffer supervisors for terminating his employment. Rice asserted claims under the ADEA, the California Fair Employment and Housing Act ("FEHA"), and the state law implied covenant of good faith and fair dealing. Before the trial, the court eliminated Rice's prayer for punitive damages. In 1985, the case was tried, and the jury returned a verdict for Rice, finding that Stauffer and the two individual defendants willfully discriminated against him because of his age. The jury awarded Rice $101,395.80 in general damages, $100,000.00 in ADEA liquidated damages, and $25,000.00 for pain and suffering under the FEHA.

The court allowed setoffs of $6,664.00 each (for severance pay Rice had received) against the general and liquidated damage awards, so that judgment was entered for Rice in the amount of $213,067.80 plus postjudgment interest. The court also awarded Rice $6,317.50 in costs and $87,290.18 in attorney's fees. In May 1988, Rice received $359,399.79 in satisfaction of the judgment, costs and fee award. Of this amount, $54,724.00 was postjudgment interest.

On appeal, the Ninth Circuit affirmed the jury verdict and the fee award, but reversed the district court's decision to strike the punitive damage prayer and remanded for a determination of the amount of punitive damages. In November 1989, the parties settled Rice's punitive damage claim for $425,000.00, of which $236,195.11 was paid to Rice, with the remainder paid directly to his attorneys.

In their 1988 federal income tax return, Michael and Billie Rice reported the following as income:

| | |
|---|---|
| General Damages | $101,396.00 |
| Offset for Severance Pay | (6,664.00) |
| Court Costs | 6,318.00 |
| Attorneys' Fees | 87,290.00 |
| Postjudgment Interest | 52,724.00 |
| | |
| Total | $241,064.00 |

The Rices also took a $100,403.00 itemized deduction as follows:

| | |
|---|---|
| Attorney's Fees | $ 94,044.00 |
| Attorney's Costs | 5,953.00 |
| Other Legal Costs | 406.00 |
| Total | $100,403.00 |

The Rices did not report as income the pain and suffering and liquidated damage awards.

Plaintiffs' 1988 return showed $50,680.00 in tax liability. The Rices timely paid this amount. In January 1992, plaintiffs claimed a refund of the entire amount. In March 1992, the Internal Revenue Service ("IRS") disallowed the refund claim.

Plaintiffs' 1989 return reported $236,195.00 in income attributable to the settlement of the punitive damage claim. The 1989 return showed $64,429 in tax liability. Again, the Rices timely paid the entire amount, and then claimed a refund. The refund claim was disallowed in March 1992.

Plaintiffs filed this action on April 1, 1992. They seek judicial review of the IRS disallowances of their refund claims. The Rices contend that the amounts in dispute were excludable from income under 26 U.S.C. § 104(a). That provision excludes from gross income "the amount of any damages received (whether by suit or agreement and whether as lump sums or as periodic payments) on account of personal injuries or sickness." An IRS regulation provides that for purposes of § 104(a), "damages received" means "an amount received ... through prosecution of a legal suit or action based upon tort or tort type rights, or through a settlement agreement entered into in lieu of such prosecution." 26 C.F.R. § 1.104–1(c). Here, the dispute focuses on the tax treatment of three separate amounts: the ADEA damage awards (general and liquidated); postjudgment interest; and the punitive damage settlement.

II

Three circuits, including the Ninth, have held that ADEA damages are excludable from income under § 104(a). *See Redfield v. Insurance Co. of North America*, 940 F.2d 542 (9th Cir.1991); *Pistillo v. C.I.R.*, 912 F.2d 145 (6th Cir.1990); *Rickel v. C.I.R.*, 900 F.2d 655 (3rd Cir.1990). This would seem to resolve the issue. The government argues, however, that the Supreme Court's recent decision in *U.S. v. Burke*, —— U.S. ——, 112 S.Ct. 1867, 119 L.Ed.2d 34 (1992), changes the analysis and compels a different result here.

*Rickel*, the first of the three circuit decisions, held that the § 104(a) inquiry must look to the nature of the claim rather than the consequences of the injury. *Rickel*, 900 F.2d at 661. Because an employer's duty not to discriminate on the basis of age arises by statute regardless of the employment contract, an age discrimination claim is "the assertion of a personal injury, tort type right." *Id.* at 662. In *Pistillo*, the Sixth Circuit relied heavily on *Rickel*, and concluded that while the lost wages sought by plaintiff were "a substantial nonpersonal consequence of his employer's age discrimination," this "did not transform the discrimination into a nonpersonal injury." *Pistillo*, 912 F.2d at 150. Finally, in *Redfield*, the Ninth Circuit followed *Rickel* and *Pistillo*, holding that "age discrimination damages are tort-type recoveries for personal injuries" and are therefore excludable from gross income. *Redfield*, 940 F.2d at 546–47.[1]

Last year, in *Burke*, the Supreme Court was asked to decide whether a Title VII backpay claim settlement was excludable from income under § 104(a)(2). The *Burke* Court first noted that the analysis must focus "on the nature of the claim underlying [the

---

1. The *Redfield* court also rejected several attempts by the defendant to distinguish *Rickel* and *Pistillo*. First, *Redfield* involved a damage award rather than a settlement payment, but the "teaching of *Rickel* and *Pistillo* [is] equally applicable to damage awards as to settlement payments in age discrimination suits." *Id.* 940 F.2d at 547. Second, in addition to the ADEA claim, the *Redfield* plaintiff had asserted state FEHA, wrongful discharge and breach of implied covenant claims. But the entire damage award was apparently attributable to the ADEA violation, and even if it were not, there was "no indication in the record that these same damages would not have been available as ADEA personal injury damages." *Id.* at 547. Finally, plaintiff had prayed for tort damages on the state law claims, so any portion of the award allocable to these causes of action would be treated as a tort recovery. *Id.* at 547–48.

damages award"; thus, the claimants "must show that Title VII, the legal basis for their recovery of backpay, redresses a tort-like personal injury." *Burke,* —— U.S. at ——, 112 S.Ct. at 1872. While the employment discrimination proscribed by Title VII "causes harm to individuals," this "does not automatically imply ... that there exists a tort-like 'personal injury' for purposes of federal income tax law." *Id.* at ——, 112 S.Ct. at 1872–73.

Before the enactment of the Civil Rights Act of 1991,[2] Title VII limited available remedies to backpay, injunctions and other equitable relief. These remedies restore discrimination victims "to the wage and employment positions they would have occupied absent the lawful discrimination." *Id.* —— U.S. at ——, 112 S.Ct. at 1873. Furthermore,

> [n]othing in this remedial scheme purports to recompense a Title VII plaintiff for any of the other traditional harms associated with personal injury, such as pain and suffering, emotional distress, harm to reputation, or other consequential damages (*e.g.,* a ruined credit rating).

*Id.* If "the relevant cause of action evidenced a tort-like conception of injury," discrimination could constitute a "personal injury" within the meaning of § 104(a). For instance, 42 U.S.C. § 1981 and Title VIII of the Civil Rights Act authorize compensatory and punitive damage awards and jury trials and therefore "sound basically in tort." *Id.* at ——, 112 S.Ct. at 1873–74. Title VII, by contrast, offers only "wages properly due" rather than the broad remedies available in these other antidiscrimination statutes. Thus, the Court concluded that Title VII, at least prior to recent amendment, does not redress a tort-like personal injury within the meaning of § 104(a). *Id.* at ——, 112 S.Ct. at 1874.

The dissent in *Burke* criticized the majority's focus on available *remedies* rather than "the nature of the statute and the type of claim brought under it." —— U.S. at ——, 112 S.Ct. at 1879 (O'Connor, J., dissenting). The majority, responded that

the concept of a 'tort' is inextricably bound up with remedies—specifically damages actions. Thus, we believe that consideration of the remedies available under Title VII is critical in determining 'the nature of the statute' and the 'type of claim' brought.

*Burke,* —— U.S. at —— n. 7, 112 S.Ct. at 1872 n. 7.

*Burke* does not overrule *Rickel, Pistillo* and *Redfield.* But *Burke* does hold that an analysis of the available remedies is critical to the § 104(a) determination. Like Title VII, the ADEA does not authorize compensatory and punitive damage awards by name. *See Naton v. Bank of California,* 649 F.2d 691, 698–99 (9th Cir.1981); *Cancellier v. Federated Dept. Stores,* 672 F.2d 1312, 1318 (9th Cir.1982). But the ADEA is not identical to Title VII prior to amendment by the Civil Rights Act of 1991. The ADEA provides for liquidated damages, in an amount equal to wages and benefits from the date of termination to the date of trial, in "cases of willful violations." 29 U.S.C. § 626(b); *see Cassino v. Reichhold Chemicals, Inc.,* 817 F.2d 1338, 1348 (9th Cir.1987). The Act thus authorizes double damages. It also provides for jury trials. These are significant distinctions from pre-amendment Title VII.

■ Whether ADEA liquidated damages are best characterized as punitive or compensatory is the subject of spirited debate. No court, however, has adopted the government's proposal in this case that liquidated damages are a contract-like remedy for economic harm. *See* Defendant's Mem., 9:5–19 & n. 1. Instead, courts have characterized ADEA liquidated damages as compensatory, punitive or both. *See Powers v. Grinnell Corp.,* 915 F.2d 34, 41–42 (1st Cir.1990) (liquidated damages serve compensatory and punitive functions); *Fortino v. Quasar Co.,* 950 F.2d 389, 397–98 (7th Cir.1991) (same); *Burns v. Texas City Refining, Inc.,* 890 F.2d 747 (5th Cir.1989) (same); *but see Reichman v. Bonsignore, Brignati & Mazzotta, P.C.,* 818 F.2d 278, 281–82 (2nd Cir.1987) (punitive only); *Lindsey v. American Cast Iron Pipe*

---

**2.** Pub.L. 102–166, 105 Stat. 1071 (1991). In *Burke,* the parties agreed that the Act did not apply.

_Co.,_ 810 F.2d 1094, 1102 (11th Cir.1987).[3] The court adopts the view expressed in _Powers_ and elsewhere that ADEA liquidated damages serve both punitive and compensatory purposes. _Powers,_ 915 F.2d at 41–42; _Downey v. C.I.R.,_ 97 T.C. 150, ——, 1991 WL 140900 (1991); _Keller v. C.I.R.,_ 1991 WL 148901 (Tax Court 1991). But no matter how characterized, whether as punitive, compensatory, or both, the ADEA's liquidated damages provision is a tort type remedy which distinguishes the ADEA from pre-amendment Title VII.

Finally, in considering whether these features of the ADEA are sufficient to distinguish _Burke,_ the IRS regulation's broad language becomes conclusive. The regulation refers to "tort type rights" which invites a liberal reading by its deliberately vague and inclusive language. 26 C.F.R. § 1.104–1(c).

The court concludes that _Redfield_ is still the law of this circuit. In light of the ADEA's provision of compensatory and punitive damages through a liquidated damage award and its provision for jury trial, the Act "sounds basically in tort." _Burke,_ —— U.S. at ——, 112 S.Ct. at 1874. Plaintiff Michael Rice's ADEA damage awards are therefore excludable from income under § 104(a).

### III

■ The parties also dispute the tax consequences of the $52,724.00 in postjudgment interest that Michael Rice received in 1988. Interest is specifically included in "gross income" under 26 U.S.C. § 61(a)(4), and "interest awarded in a judgment is generally considered ordinary income, regardless of how the judgment itself is taxed." _Aames v. C.I.R.,_ 94 T.C. 189, 190, 1990 WL 17276 (1990) (citing _Wheeler v. C.I.R.,_ 58 T.C. 459, 461–62, 1972 WL 2577 (1972)). Thus, statutory interest (prejudgment _or_ postjudgment) on tort damages is _not_ excludable under § 104(a)(2) even though the damages themselves are excluded from income. _Kovacs v. C.I.R.,_ 1993 WL 46512 (Tax Court Feb. 24, 1993).[4]

### IV

The remaining question is whether the $236,195.00 punitive damage settlement is excludable under § 104(a)(2). The history of the treatment of punitive damages under the Tax Code is somewhat tortured. Initially, punitive damages were taxed as ordinary income. But in 1975, the IRS issued a Revenue Ruling which interpreted § 104(a)(2) to _exclude_ punitive damages received on account of a _personal_ injury. Rev.Rul. 75–45, 1975–1 C.B. 47; _see Roemer v. C.I.R.,_ 716 F.2d 693, 700 (9th Cir.1983). In 1983, the Ninth Circuit held that in light of the Commissioner's "liberal" interpretation of the statute in the Revenue Ruling, punitive damages awarded on a defamation claim were excluded from gross income. _Roemer,_ 716 F.2d at 700.

The Ninth Circuit has stated on several occasions that liquidated damages are a substitute for punitive damages. _See, e.g., Criswell v. Western Airlines, Inc.,_ 709 F.2d 544, 556 (9th Cir.1983); _Cancellier,_ 672 F.2d at 1317 n. 4; _Kelly v. American Standard, Inc.,_ 640 F.2d 974, 979 (9th Cir. 1981). But these cases ultimately rely on a Fifth Circuit decision that predates the 1978 Amendments and their attendant legislative history. _See Kelly,_ 640 F.2d 974, 979 (9th Cir.1981) (citing _Dean v. American Security Insurance Co.,_ 559 F.2d 1036, 1039–40 (5th Cir.1977)); _Cancellier,_ 672 F.2d at 1317 n. 4 (same).

---

**3.** In _Trans World Airlines, Inc. v. Thurston,_ 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985) the Court observed that "[t]he legislative history of the ADEA indicates that Congress intended for liquidated damages to be punitive in nature." _Id.,_ 469 U.S. at 125, 105 S.Ct. at 624. But _Thurston_ did not hold that the _sole_ function of liquidated damages was punitive. And while the Court relied on Senator Javits' floor statement during the 1967 debate over the initial Act, the legislative history surrounding the 1978 Amendments shows that Congress intended liquidated damages to "compensate the aggrieved party for nonpecuniary losses arising out of a willful violation of the ADEA." The legislative history also explains that "liquidated damages are in the nature of legal relief ... [t]he ADEA as amended by this Act does not provide remedies of a punitive nature." H.R.Conf.Rep. No. 950, 95th Cong., 2nd Sess. 13 (1978), U.S.Code Cong. & Admin.News 1978, 504, 535.

**4.** _Roemer v. C.I.R.,_ 716 F.2d 693 (9th Cir.1983), cited by plaintiffs for the general proposition that "damages flowing from personal injury are excludable," does not purport to alter the longstanding rule that interest is income.

Then, in 1984, the IRS reversed field and revoked Rev.Rul. 75–45, because punitive damages do not compensate a taxpayer for loss and "are awarded not 'on account of personal injury' ... but are determined with reference to the defendant's degree of fault." Rev.Rul. 84–108, 1984–2 C.B. 32. In *C.I.R. v. Miller*, 914 F.2d 586, 591 (4th Cir.1990), the Fourth Circuit recognized the effect of the Commissioner's shift:

> [In *Roemer*], the Ninth Circuit was merely presenting proof that when in Rome one should do as the Romans do. However, in the first place, the Commissioner's subsequent shift in position calls for *Roemer*, as a Roman, to shift also.

*Id.* 914 F.2d at 591. In light of the 1984 Revenue Ruling and the general principle that exclusions from income are narrowly construed, the *Miller* court held that punitive damages should be included in gross income. *Id.*

Finally, in 1989, Congress amended § 104(a) to provide that the exclusion for personal injury damages "shall not apply to any punitive damages in connection with a case not involving physical injury or physical sickness." The parties agree that the 1989 amendment has no bearing on this case,[5] although plaintiffs argue that the IRS sought the 1989 amendment because "for previous and transition years, those punitive damages were in fact excludable."

Plaintiffs urge the court to follow *Roemer*. But *Roemer* relied solely (and perhaps reluctantly) on the 1975 Revenue Ruling that was subsequently revoked. Before that Ruling, it was well-settled that punitive damages were taxable income because they represented an accession to wealth rather than restoration of capital. *See, e.g., Starrels v. C.I.R.*, 304 F.2d 574, 576–77 (9th Cir.1962).

---

5. Congress expressly provided that the amendment would not apply to any suit filed before July 10, 1989. *See* Pub.L. 101–239, § 7641(b) (1989).

6. The parties do not discuss the degree of deference due the 1984 Revenue Ruling. "Revenue Rulings, while not binding on the Secretary or on the Courts, will be given considerable weight when explicating the Commissioner's authority to implement a congressional mandate." *Certified Stainless Services, Inc. v. United States*, 736

Because the Ruling has been revoked, punitive damages are again taxable income.[6]

IT IS SO ORDERED.

F.2d 1383, 1386 (9th Cir.1984) (citations omitted). But 26 U.S.C. § 104(a), the statutory provision in question, does not grant the Secretary discretionary power to determine "damages received on account of personal injuries." *Cf. Certified Stainless Services*, 736 F.2d at 1386. Even if the 1984 Ruling is given no deference, however, *Starrels* once again appears to be the law of the circuit.